*In re* ORGANIZATION OF BYRON PARK DISTRICT.—(PETITIONERS TO ORGANIZE A PARK DISTRICT TO BE KNOWN AS THE BYRON PARK DISTRICT, Petitioners-Appellants and Cross-Appellees, *v.* OREGON PARK DISTRICT, Objector-Appellee and Cross-Appellant.)

*In re* ANNEXATION TO OREGON PARK DISTRICT.—(OREGON PARK DISTRICT, Petitioner-Appellee, *v.* CHET KOBEL *et al.*, Objectors-Appellants.)

Second District   Nos. 78-103, 78-453 cons.

Opinion filed December 21, 1978.

Robert W. Gosdick, of Keegan & Gosdick, and Joseph L. Long, of Barrick, Jackson, Switzer, Long, & Balsley, both of Rockford, for appellants Petitioners to Organize a Park District, and Chet Kobel.

Bruce D. Wellman, of Guyer, Enichen & Mayfield, of Rockford, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This is a consolidated appeal from trial court decisions in two matters involving conflicting efforts to annex or incorporate the site of a nuclear power plant.

The first of these matters arose on July 11, 1977, when a petition was filed on the behalf of more than 100 residents of the Byron, Illinois, area, before the circuit court of Ogle County, seeking an election, pursuant to section 2—1 *et seq.* of the Park District Code (Ill. Rev. Stat. 1977, ch. 105, par. 2—1 *et seq.*) for the organization of a park district to be known as the Byron Park District. The territory of the proposed park district included the 525-acre tract which is the site of Commonwealth Edison's Byron

station, a nuclear power plant which is still under construction. Unfortunately for the Byron petitioners, the territory specified in the Byron petition also inadvertently included a tract of approximately 2500 acres which was already located within the existing Oregon Park District. The second action commenced on July 13, 1977, when the Oregon Park District filed a petition in the circuit court of Ogle County seeking the annexation of the Byron station site, pursuant to sections 3—2 and 3—3 of the Park District Code (Ill. Rev. Stat. 1977, ch. 105, pars. 3—2 and 3—3). Thereafter, the Oregon Park District intervened as an objector in the Byron petition, and the Byron petitioners reciprocated by intervening as objectors in the Oregon Park District Annexation proceedings. Commonwealth Edison intervened nominally in the Byron matter and intervened as an objector in the Oregon annexation proceeding.

The course of each of these proceedings can be summarized as follows: In the Byron matter, the Byron petitioners discovered their error in including part of the Oregon Park District in the territory of the proposed Byron Park District, and secured leave to file an amended petition. On July 18, 1977, five days after the filing of the Oregon Park District annexation petition, the Byron petitioners filed an amended petition which excluded the 2500-acre tract which had been erroneously included in the territory subject to the first petition. The Oregon Park District filed objections to the Byron petition, asserting that the initial Byron petition was a nullity since it included tracts already located within the Oregon Park District; that this error deprived the court of jurisdiction, and the court could not permit an amendment to the petition. In the alternative, Oregon argued that the amended petition did not "relate back" to the filing date of the original Byron petition. It was also asserted that the amended Byron petition did not contain the signatures of "not less than 100 legal voters in the district to be organized." Following an evidentiary hearing, the court entered an order on November 28, 1977, which provided that the Oregon Park District's annexation was entitled to priority "in time and right" over the Byron petition. However, Oregon's other objections were denied, and the order further provided that the Byron petitioners may apply to the court for an order setting a date for election, after the disposition of the Oregon annexation proceedings. The Byron petitioners have appealed from the trial court's holding that the Oregon Park District annexation proceeding was entitled to priority and the Oregon Park District has brought a cross-appeal from that portion of the trial court's order which allows the Byron petitioners to proceed with their petition, upon the completion of the proceedings in the Oregon Park District annexation petition, contending that the Byron petitioners failed to meet their burden of proving that the signatures on the Byron petition were genuine.

In the related matter of the Oregon annexation petition, the Byron petitioners and Commonwealth Edison, by way of motion or objection, asserted that Oregon's annexation petition was invalid, due to violations of the Illinois open meetings law (Ill. Rev. Stat. 1977, ch. 102, par. 41 *et seq.*), the failure to obtain the consent of the owners of the tract being annexed, and the failure to pass an annexation ordinance, as required by the Park District Code (Ill. Rev. Stat. 1977, ch. 105, par. 3—2). The trial court entered an order which denied the motions and objections of the Byron petitioners and Commonwealth Edison, on September 12, 1978, and entered a further order on the same day, which certified, pursuant to Supreme Court Rule 308(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 308(a)), that an immediate appeal would materially advance the ultimate termination of the litigation. We subsequently granted leave to appeal.

■■■ We begin by dealing with the Byron petitioners' appeal from the trial court's order of November 28, 1977, holding that the Oregon Park District's annexation petition was entitled to priority. The general principle governing conflicting petitions to annex or incorporate the same tract of land is clear: The first petition for annexation or incorporation to be filed is entitled to priority. (See *In re Incorporation of Village of Capitol Heights* (1968), 41 Ill. 2d 256; *City of Countryside v. Village of La Grange* (1962), 24 Ill. 2d 163; *City of East St. Louis v. Touchette* (1958), 14 Ill. 2d 243.) However, it has been held that the erroneous inclusion of lands not properly subject to incorporation or annexation is a jurisdictional defect which invalidates the petition. (*People ex rel. Curtin v. Heizer* (1967), 36 Ill. 2d 438; *People ex rel. Hoyne v. Stumpf* (1916), 275 Ill. 81.) Where such a petition contains a jurisdictional defect, it is not entitled to priority over a subsequently filed petition to annex or incorporate the same territory, or a portion thereof. (*In re Annexation to Village of Green Oaks* (1975), 25 Ill. App. 3d 1078.) Since the territory described in the initial Byron petition included 2500 acres which were already within the Oregon Park District, and therefore not subject to incorporation, it would seem to be clear that the trial court was correct in holding that the Oregon annexation petition was entitled to priority.

■■■ The Byron petitioners have raised two arguments in an attempt to escape the application of these principles. They assert that the inclusion of 2500 acres not subject to incorporation in their initial petition was a minor and inadvertent error, which the trial court should have regarded as *de minimis* and held not to affect the priority to which the Byron petition would otherwise be entitled. *People v. Knapp* (1963), 28 Ill. 2d 239, is cited in support of the proposition. In *Knapp,* a petition for the incorporation of a municipality inadvertently included a strip of land 6 or 7 feet wide, and 250 feet long, which was part of a tract formerly annexed to the City of Joliet. The court held that this overlap was *de minimis,* and

would not affect the validity of the incorporation proceedings. (Also see *People ex rel. Village of Northbrook v. City of Highland Park* (1976), 35 Ill. App. 3d 435.) In the present case, we do not see how the erroneous inclusion of a tract of some 2500 acres can be regarded as trivial or *de minimis*, like the "small sliver of land" in *Knapp*. (See *People ex rel. Curtin v. Heizer* (1967), 36 Ill. 2d 438.) While *In re Annexation to the Village of Bradley* (1961), 30 Ill. App. 2d 391, has been cited by the Byron petitioners, the case is not on point, since it deals with the trial court's jurisdiction to allow an amendment of an annexation petition which erroneously included territory which was located within another municipality; the question of priority was not involved. The Byron petitioners have also argued that their amended petition should have been held to "relate back" to the date of the filing of the original (defective) petition. There is no provision in the Park District Code which would support this contention, and this court has held that section 46—2 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46—2), which allows an amended pleading to relate back to the time of the filing of the original pleading for purposes of avoiding (under certain circumstances) the bar of the statute of limitations, does not provide for "relation back" for any other purpose. (*Illinois Sterling, Inc. v. KDI Corp.* (1975), 33 Ill. App. 3d 666.) Thus, there was no error in the trial court's holding that the amended Byron petition did not relate back to the filing of the initial (defective) Byron petition.

The Byron petitioners appeal from the trial court's order of November 28, 1977, entered In the Matter of a Petition to Organize a Park District to be Known as the Byron Park District, must therefore fail.

■■ Turning to the Oregon Park District's cross-appeal, the only issue presented is whether the Byron petitioners sufficiently established that their petition contained the signatures of not less than 100 legal voters who resided within the proposed district, as required by section 2—2 of the Park District Code (Ill. Rev. Stat. 1977, ch. 105, par. 2—2). The evidence was uncontradicted that the signatures on the petition were the names of more than 100 registered voters living within the proposed district. However, the Oregon Park District argues that there was insufficient proof that the signatures themselves were genuine. One of the circulators of the petition testified that he was familiar with the signatures of the persons residing within the proposed district and knows 95% of them; 149 names were affixed to the petition. Three of the petitioners actually testified. The Byron petitioners filed an "Answer to Objections to Petition" in open court which contained a sworn statement that the amended petition contained signatures of 100 legal voters in the district to be organized. Oregon did not present so much as a scintilla of evidence that even one of the signatures was forged. Under these circumstances, we

decline to hold that the Byron petitioners' failure to present the testimony of all of the circulators of the petition, renders the court's finding that the petition contained the signatures of 100 legal voters of the proposed Byron Park District, against the manifest weight of the evidence. We are therefore bound to affirm the trial court's order of November 28, 1977, In the Matter of a Petition to Organize a Park District to be Known as the Byron Park District, in its entirety.

An analysis of the briefs and arguments, as well as the applicable statutes and authorities, has also convinced us that we must affirm the trial court's decision In re Petition for Annexation of Additional Territory to Oregon Park District. In the briefs which the Byron petitioners and Commonwealth Edison have filed with this court, they contend that the trial court's order of September 12, 1978, allowing (after a stay) Oregon to proceed with its election on the annexation petition, should be reversed, since (1) Oregon's failure to comply with the provisions of the open meetings act invalidates the park board's subsequent determination to annex the Byron station site; (2) the Byron station site was not property used for commercial or industrial purposes within the meaning of section 3—2 of the Park District Code, and was therefore not subject to annexation without the consent of the owner, Commonwealth Edison, and (3) the annexation petition was invalid, since the Oregon Park District's board passed a mere resolution instead of an annexation ordinance required by section 3—2 of the Park District Code.

■■ The first of these arguments is not very troublesome. The trial court found that Oregon failed to publish or post a public notice of its regular meetings for the calendar and fiscal years in which its July 12, 1977, meeting occurred, as required by the open meetings act (Ill. Rev. Stat. 1977, ch. 102, pars. 42.02 and 42.03); it was at the July 12 meeting that the board determined to annex the Byron station. The Byron petitioners and Commonwealth Edison urge that the violation of the open meetings act invalidated the Oregon Park Board's determination to initiate annexation procedures. However, although the open meetings act provides for the issuance of a mandamus to compel meetings to be open and even provides criminal penalties, under some circumstances, for public office holders who refuse to comply with the act, nothing in the act or elsewhere, invalidates official actions taken at proceedings held in a manner violative of the open meetings act. (*Board of Education v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415.) To hold otherwise in this case would render every action of a public body during the course of an entire year, subject to being set aside due to a violation of the open meetings act which occurred at the outset of the year. We, therefore, reject the Byron petitioners' and Commonwealth Edison's argument on this point.

■■ Similarly, no great difficulty is presented by the argument that the Byron station nuclear reactor construction site was not property used for commercial or industrial purposes under section 3—2 of the Park District Code. Under that section, the owner's consent is required for the annexation of any tract exceeding 20 acres, unless the tract is subdivided, bounded on three sides by land that is subdivided, or is used for commercial or industrial purposes. Although a nuclear reactor site would seem to be a commercial or industrial use of property, the Byron petitioners and Commonwealth Edison point out that the reactor is still under construction and that even the construction site occupies only 152 acres out of the 525 acres involved herein. The reason for this disparity is that N.R.C. regulations require that the Byron reactor be surrounded by a large "exclusion area" which constitutes a buffer between the reactor and the civil population. Thus, the land used as the "exclusion area" is an integral component of the reactor site as a whole and we find no error in the trial court's holding that the Byron station tract was being used for commercial or industrial purposes within the meaning of section 3—2.

The Byron petitioners and Commonwealth Edison have raised a closer question with their final contention. The statutory authority for Oregon's contemplated annexation is section 3—2 of the Park District Code (Ill. Rev. Stat. 1977, ch. 105, par. 3—2) which provides in part as follows:

> "* * * The Board of any park district may initiate the [annexation] proceedings by enacting an ordinance expressing its desire to annex such territory * * *. Such ordinance or petition shall be filed with the Clerk of the Circuit Court of the County wherein such Park District or greater or greatest portion thereof lies, which ordinance or petition shall set forth the name of the Park District to which annexation is proposed, [etc.] * * *."

The Byron petitioners and Commonwealth Edison argue that this section requires that annexation proceedings be initiated by the passage of an ordinance, and the Oregon annexation proceeding is invalid, because Oregon's board passed a resolution. Oregon responds that the enactment passed at its board's meeting July 12, 1977, was an ordinance and not a resolution. The document itself was titled "Oregon Park District Ordinance No. 77 ___." The document records the votes of the park commissioners, and contains a certification by the park district's clerk that it is "a true and correct copy of the ordinance passed by the board * * *." On the other hand, in place of the normal ordaining clause, the document provides, "Now, therefore be it resolved," and the minutes of the board meeting describe the passage of "Resolution No. 77 expressing * * * [the board's] desire to annex certain additional territory in the existing park district and that a petition be filed with the Ogle County court." Thus,

there is some confusion on the face of the enactment as to whether it was an ordinance or a resolution.

However, from the record, the intent and substance of the Oregon Park District board's action is clear. Thus, Beth Kultgen, a nurse at the Swedish American Hospital and president of the Oregon Park District at the time in question, testified that she did not understand the difference between an ordinance and a resolution, and throughout her testimony used the terms almost interchangeably. She stated that the board had made a preliminary decision regarding the annexation proceeding by a "motion" in January of 1977; however, she understood that further board action on July 12 was necessary since "this ordinance No. 77 required our vote and signature at this point in time." The document itself provides that "pursuant to the provisions of chapter 105, Ill. Rev. Stat. 1977, sections 3—2 and 3—3" a petition for annexation "should be filed with the circuit court of Ogle County." Thus, although the lay board of the Oregon Park District may not have appreciated the legal and operative difference between an ordinance and a resolution, they intended that their enactment of July 12, 1977, would fulfill the requirement of section 3—2, that the enactment be formal, operative, and more than a mere expression of opinion. See 56 Am. Jur. 2d *Municipal Corporations* §344 (1971).

■■ We do not dispute the rule that where the statute declares that an act be done by ordinance, a resolution is not sufficient. (*E.g., Illinois Municipal Retirement Fund v. City of Barry* (1977), 52 Ill. App. 3d 644; *Village of Gulfport v. Buettner* (1969), 114 Ill. App. 2d 1.) However, we are convinced that the enactment in this case was in substance an ordinance, and sufficed to satisfy the requirements of the Park District Code. Therefore, the trial court's order of September 12, 1978, in In re Petition for Annexation of Additional Territory to Oregon Park District is affirmed.

Orders affirmed.

NASH and WOODWARD, JJ., concur.