WSDR, INC., *et al.*, Petitioners-Appellees, *v.* OGLE COUNTY, Respondent-Appellant.

Second District  No. 81-267

Opinion filed October 15, 1981.

Dennis Schumacher, State's Attorney, of Oregon (Kevin Corr, Assistant State's Attorney, of counsel), for appellant.

Thomas Kavadas, Jr., of Pignatelli and Kavadas, of Sterling, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Respondent, Ogle County Board (Board), appeals from a writ of *mandamus* of the Circuit Court of Ogle County ordering that its members at the next regular or adjourned session announce publicly for whom they voted in the election for county board chairman held on December 1, 1980. We affirm.

On December 1, 1980, the Board held an organizational meeting including the election of a Board chairman. Two members of the Board had been nominated for the position, William Motter and Robert Gingerich. Following the nominations there was a motion that the vote be by written ballots, which motion was approved by voice vote.

The vote of each individual member was by secret written ballot. William Motter was elected chairman by a vote of 14 to 10. He took office and is currently serving a two-year term. All activities, procedures, discussions and motions of the Board occurred in public and in the presence of several news media personnel.

The issue presented for review, which appears to be one of first impression, is whether the Open Meetings Act (Ill. Rev. Stat. 1979, ch. 102, par. 41 *et seq.*) was violated by the Ogle County Board when it elected its chairman by secret written ballot. Section 1 of the Open Meetings Act (Ill. Rev. Stat. 1979, ch. 102, par. 41) states:

> "It is the public policy of this State that the public commissions, committees and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of this Act that their actions be taken openly and that their deliberations be conducted openly."

The provision of the statute which follows this statement of public policy offers greater specificity wherein it provides in relevant part in section 2:

> "All meetings of any legislative * * * bodies of the * * * counties * * * which are supported in whole or in part by tax revenue, or which expend tax revenue shall be public meetings * * *." (Ill. Rev. Stat. 1979, ch. 102, par. 42.)

Thereafter follow numerous specific exceptions of which county board organizational meetings or election of officers is not included.

A *secret* ballot for the election of chairman of the county board is the antithesis of an open meeting even though the vote was conducted in the

presence of the public. The chairman wields significant public and political power. The person to whom each of the representatives of the public delegates that power can be highly indicative to their voters and the public of the quality of their public service.

The respondent contends that the chairman of the board can be elected by secret ballot by all the voters under section 7 of "An Act relating to the composition and election of county boards * * *" (Ill. Rev. Stat., 1980 Supp., ch. 34, par. 837). We are asked to find an analogy between a general election of county board chairman by the voters at large and a secret ballot cast by the elected representatives. The analogy fails. If the Board desires to have its chairman elected at large by the public at an election it can pass the appropriate resolution pursuant to the new statute cited above. Until that issue is properly presented and approved, the board members stand as representatives of the district from which they were elected and are bound by the provisions of the Open Meetings Act.

The respondent indicated that its purpose in selecting a secret ballot was to avoid subsequent antagonism between the board members. The Board reasoned that its members could work more harmoniously if their differences as to choices for chairman were secret. However, this admirable goal ignores the principles of a representative democracy. The voters who elected these board members are no longer in a position to judge the competency of their representatives. The Attorney General of Illinois in 1975 addressed this problem. He stated in pertinent part:

> "I understand that secret balloting serves to protect public officials from criticism and that this may have been the reason for the secret ballot in this case. However, public officials are subject to criticism for action they take in fulfilling their duties as public officials and anyone who undertakes a public office or membership on a public body should be aware that his actions will be subject to criticism. Anyone who is unwilling to subject himself to such criticism by the public should not accept public office or membership of a public board. The public has a right to know how their public officials and representatives vote on issues, not only so they may try to persuade them to change their position or congratulate them on actions they have taken, but also that they may have the necessary information to decide whether they want to retain that person in public office. Secret voting by members of public bodies, can only contribute to further deterioration of public confidence in government and undermine the very bases of representative democracy." (1975 Ill. Op. Att'y Gen. 138-39.)

Although the precise issue in this case is one of first impression, concern

over board elections by secret ballot was articulated as early as 1933. The Attorney General of Illinois in that year stated in relevant part:

> "\* \* \* If the board can secretly elect a chairman, they can take secret action on other matters and they are numerous, other than the appropriation of money. Of what avail is an open door to the public if the proceedings are secret. The eye can see, the ear can hear, but secrecy conceals all. It is no advantage to the citizen to see a member write a name secretly on a ballot unless he is privileged to read what is thereon written. If the vote were taken by whispering in tones so low the attending citizen could not hear, how would he know what was being done. If no record is made of how the individual members vote, of what avail is the statute providing for a meeting with open doors." (1933 Ill. Op. Att'y Gen. 335.)

While the opinion of the Attorney General may not be binding on this court, it is persuasive. (*Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 292, 134 N.E.2d 292; *Long v. Long* (1957), 15 Ill. App. 2d 276, 145 N.E.2d 509.) In the absence of judicial authority on point we choose to follow the policy considerations expressed by these two opinions.

■■ Accordingly, we agree with the trial court's conclusion that the secret ballot for the election of the Ogle County Board Chairman taken on December 1, 1980, was in violation of the public policy of this State as well as its statutory enactment under the Open Meetings Act (Ill. Rev. Stat. 1979, ch. 102, par. 41 *et seq*.). While the election was in violation of the law we need not invalidate it. The Open Meetings Act does not allow the court to invalidate official actions taken at proceedings held in a manner violative of the Act. This court in *In re Organization of Byron Park District* (1978), 67 Ill. App. 3d 61, 66, 385 N.E.2d 67, 71, stated:

> "However, although the open meetings act provides for the issuance of a mandamus to compel meetings to be open and even provides criminal penalties, under some circumstances, for public office holders who refuse to comply with the act, nothing in the act or elsewhere, invalidates official actions taken at proceedings held in a manner violative of the open meetings act."

See *Board of Education v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415, 376 N.E.2d 1054.

■■ We conclude that even though the election should not be invalidated public interest can still be served by a disclosure by the individual board members of their vote on December 1, 1980. In *People ex rel. Hopf v. Barger* (1975), 30 Ill. App. 3d 525, 531, 332 N.E.2d 649, 655, we stated:

> "However, even where the relief sought in a petition for mandamus becomes moot it does not necessarily follow that the cause

should be dismissed when the issues presented are of substantial public interest."

In view of the foregoing considerations, the judgment of the Circuit Court of Ogle County is affirmed.

Affirmed.

SEIDENFELD, P. J., and HOPF, J., concur.