JOHN POTTER et al., Plaintiffs-Appellants, v. EUGENE JUDGE et al., Defendants-Appellees.

Third District   No. 82—175

Opinion filed January 6, 1983.

Matthew A. Maloney, of Pierson & Maloney, of Princeton, for appellants.

Donald C. Martin, of Johnson, Martin & Russell, and John Isaacson, of Trimble, Angel, Hornbaker & Isaacson, both of Princeton, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

This action involves the appeal from an order granting judgment on the pleadings based upon a complaint for declaratory judgment filed by John Potter and E. P. Becker, Inc., an Illinois corporation, against the city of Princeton, a municipal corporation, Eugene Judge, Helen L. Judge and Citizens First National Bank of Princeton, a banking corporation, requesting that the trial court decide that the "Industrial Project Revenue Bond Act," as applied and alleged in the complaint filed, was unconstitutional and further seeking a determination that the "Open Meetings Act" was likewise violated in certain particulars. The trial court allowed the joint motion for judgment on the pleadings filed by all defendants.

On December 7, 1981, the city of Princeton adopted an ordinance which authorized the issuance of its Industrial Project Revenue Bonds (IRBS), at the request of Eugene and Helen L. Judge, for the acquisition and construction of a "Convenient Food Mart" within the city of Princeton; the project was to be financed by Citizens First National Bank of Princeton. The initial meeting of the Princeton City Council to consider this request occurred on November 27, 1981, the day after Thanksgiving. The meeting was later continued until the date at which the ordinance in question was adopted. John Potter and E. P. Becker, Inc. (Beckers) claimed that the proposed "Convenient Food Mart" would be in direct competition with their existing retail businesses and filed a complaint for declaratory judgment, alleging what they believed to be certain constitutional violations by the ordinance

and also claiming that the ordinance was adopted, in part, in violation of the Open Meetings Act.

The statute which plaintiffs challenge provides as follows:

"Whenever used in this Division 74, unless a different meaning clearly appears from the context:

(1) 'Industrial project' means any (a) capital project, including one or more buildings and other structures, improvements, machinery, and equipment whether or not on the same site or sites now existing or hereafter acquired, suitable for use by any manufacturing, industrial, research or commercial enterprise including, but not limited to, use as a factory, mill, processing plant, assembly plant, packaging plant, fabricating plant, office building, industrial distribution center, warehouse, repair, overhaul or service facility, freight terminal, research facility, test facility, commercial facility, and including also the sites thereof and other rights in land therefor whether improved or unimproved, site preparation and landscaping, and all appurtenances and facilities incidental thereto such as utilities, access roads, railroad sidings, truck docking and similar facilities, parking facilities, dockage, wharfage, and other improvements necessary or convenient thereto; or (b) any land, buildings, machinery or equipment comprising an addition to, or renovation, rehabilitation or improvement of any existing capital project.

(2) 'Municipality' includes any city, village or incorporated town in this State." Ill. Rev. Stat. 1981, ch. 24, par. 11—74—2.

"It is hereby determined and declared that the purpose of this Division 74 is to relieve conditions of unemployment, to maintain existing levels of employment, to aid in the rehabilitation of returning veterans, and to encourage the increase of industry and commerce within this State, thereby reducing the evils attendant upon unemployment, to increase the tax base of the various municipalities of this State and to permit municipalities in this State to take as much advantage of the provisions of Section 103 of the United States Internal Revenue Code as is possible, which are all declared and determined to be public purposes and for the public safety, benefit and welfare of the residents of this State." Ill. Rev. Stat. 1981, ch. 24, par. 11—74—3.

The plaintiffs' constitutional arguments allege that the Industrial Project Revenue Bond Act (Ill. Rev. Stat. 1981, ch. 24, par. 11—74—1 *et seq.*) contravenes rights guaranteed by the fourteenth amendment of the United States Constitution, and by article I, section 2 of the

Constitution of the State of Illinois. These constitutional provisions, of course, guarantee the fundamental rights to due process of law and to equal protection of the laws.

The plaintiffs frame their constitutional arguments exclusively in terms of equal protection. Notwithstanding this premise, however, the plaintiffs offer no authority or analysis which is based on equal protection. The authorities upon which they rely appear to focus on the wholly different question of whether municipal bond financing of private industry embodies a public purpose.

The "public purpose" analysis rests, in part, upon the long-settled principle that the imposition of taxes for nonpublic purposes contravenes due process of law. (*Green v. Frazier* (1920), 253 U.S. 233, 64 L. Ed. 878, 40 S. Ct. 499; *Schuler v. Board of Education* (1938), 370 Ill. 107, 18 N.E.2d 174.) The analysis also rests in part upon State constitutional provisions, which typically prohibit the extension of public funds or public credit for private purposes. The Illinois Constitution of 1970, article VIII, section 1(a), provides:

> "Public funds, property or credit shall be used only for public purposes."

Neither basis for the "public purpose" analysis appears in the case at bar. The due process issue is not presented, because the Act does not in any way involve the use of tax revenues.[1] (*People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 291 N.E.2d 807.) The "use of public funds, property, or credit" issue is not presented, because the plaintiffs did not plead that section of the State Constitution in their complaint.

■■ The plaintiffs have therefore failed to argue the only constitutional issue (that of equal protection) which is presented by their complaint. They have argued a separate constitutional issue (that of "public purpose") which has no basis in their complaint, and which therefore is not germane to a judgment on the pleadings. This court must therefore reject summarily the contention of the plaintiffs that the Act, or any portion of the Act, is unconstitutional. Bare conten-

---

[1]The Act allows municipalities to finance industrial and other projects by issuing their tax-free bonds in return for investment capital. Low rates of interest thus can be obtained on borrowed money, for the purpose of encouraging local development. The Act provides (Ill. Rev. Stat. 1981, ch. 24, par. 11—74—7) that repayment of the bonds may be secured through the terms of rent charged for use of the project, once developed, through a pledge of income and revenues from the project, or through a mortgage of the project to the bondholders. However, the Act explicitly provides that there is no obligation on the part of the municipality itself to guarantee payment of the bonds (Ill. Rev. Stat. 1981, ch. 24, par. 11—74—10).

tions unsupported by argument or by citation of authority are waived on appeal. 87 Ill. 2d R. 341(e)(7); *Village of Roxana v. Costanzo* (1968), 41 Ill. 2d 423, 243 N.E.2d 242; *cf.* Ill. Rev. Stat. 1977, ch. 110A, par. 341(F); *L. D. Brinkman & Company-Midwest v. National Sponge Cushion Co.* (1979), 76 Ill. App. 3d 683, 394 N.E.2d 1221.

Notwithstanding our holding that inquiry into the actual constitutional validity of the Act is unwarranted, given the plaintiffs' arguments, nevertheless we believe that it can be affirmatively shown that the Act is constitutional. Illinois case law, strongly supported by law in other jurisdictions, shows conclusively that the Act is valid under both a "public purpose" and an "equal protection" analysis.

■■ The Illinois Supreme Court has expressly noted the general state of the common law on this issue. In *People ex rel. City of Salem v. McMackin* the court stated:

> "It appears that as of this time (1972) the courts of approximately 31 States have found that industrial-project-revenue-bond statutes serve a public purpose. Legislatures in 48 States have adopted legislation to provide financing of this type. To date, court decisions in only 5 States have held such legislation invalid." (53 Ill. 2d 347, 355, 291 N.E.2d 807, 813.)

See also the citation of authority from other jurisdictions compiled in *People ex rel. City of Urbana v. Paley* (1977), 68 Ill. 2d 62, 368 N.E.2d 915.

The Illinois courts have taken in our view a forthright and strongly articulated position directly opposed to that which is argued by the plaintiffs here. In *Cremer v. Peoria Housing Authority* (1948), 399 Ill. 579, 78 N.E.2d 276, the court considered an attack on the validity of a statute which empowered municipal authorities to buy real estate, and to sell it to private developers, for the stated purpose of helping to relieve a shortage of housing. The court determined that the statute was designed for a public purpose, and that it was therefore constitutional, notwithstanding the fact that private parties might profit as a result.

Ten years ago, the Illinois Supreme Court applied the *Cremer* doctrine specifically to the Industrial Project Revenue Bond Act, in *People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 291 N.E.2d 807. *McMackin* was a *mandamus* action, brought by a city council to compel its mayor to issue industrial development bonds which were authorized under the Act. The mayor contended that the Act was unconstitutional, primarily on the ground that its principal purpose was to benefit private interests. The court rejected this argument. It noted, first, the preponderance of authority in other States

upholding similar statutes. It concluded:

"[T]he Supreme Courts of these States approved their respective industrial-development acts and recognized that the consensus of modern legislative and judicial thinking is to broaden the scope of activities which may be classed as involving a public purpose. They all acknowledge that the broadest expansion is perhaps reached in the areas of economic welfare." 53 Ill. 2d 347, 356, 291 N.E.2d 807, 813.

Having found the Act constitutional under the "public purpose" analysis, the court in *McMackin* went on to reject a number of other constitutional challenges. It found that (since the revenue bonds involve no pledge or encumbrance of public funds) there can be no argument that the Act entails due process violations. It also rejected an argument based upon an equal protection analysis. The mayor had contended that since the Act at that time spoke only of "industrial" projects, it discriminated arbitrarily between manufacturing plants and commercial establishments. The court replied:

"In limiting this course of financing to industrial and manufacturing plants, the legislature might reasonably have determined that the competitive harm suffered by the presence of another local commercial or service business would more than offset the gain in employment and economic development otherwise intended under the Act. Also, the amount of investment customarily required by industrial or manufacturing plants, as opposed to commercial establishments, presents a rational basis for the classification. We agree that in those communities which presently are rural in character and lack economic development, the first step towards providing employment and growth is most apt to be found in establishing an industrial base from which service and commercial enterprises may follow." *People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 364-65, 291 N.E.2d 807, 817-18.

The plaintiffs in the present case have seized on the foregoing language to contend that recent amendments to the Act are unconstitutional. Those amendments (enacted in 1980, by Pub. Act 81—1376), expanded the statute's statement of purpose to include "the increase of *** commerce" and included under the definition of an "industrial project," *inter alia,* "commercial enterprise," "office building," and "commercial facility." The plaintiffs urge that, under the analysis in *McMackin,* municipal bonding of commercial establishments cannot be construed as a "public purpose." We believe this argument has no merit.

In *People ex rel. City of Urbana v. Paley* (1977), 68 Ill. 2d 62, 368 N.E.2d 915, a *mandamus* proceeding was brought to compel a city's mayor to execute general obligation bonds for the purchase of certain land. The land was to be used for the construction of a "commercial center" by a private developer, with space provided for retail stores, for offices, and for a bank. The justification for the bond issue was to promote the redevelopment of a downtown area suffering from serious urban blight. The mayor, however, urged that the bonds were "designed to bring financial reward to private developers," and therefore were not for a "public purpose." The supreme court, however, rejected this contention. Citing *McMackin* and the prevailing rule of law in other States, it held that private benefits properly could be reaped from public funds, so long as the project's primary purpose was a public one. It specifically held, in this context, that "[s]timulation of commercial growth" was a proper public purpose. 68 Ill. 2d 62, 75, 368 N.E.2d 915, 921.

A recent decision which reinforces *McMackin* and *Paley* is *Marshall Field & Co. v. Village of South Barrington* (1981), 92 Ill. App. 3d 360, 415 N.E.2d 1277. In *Marshall Field* the court construed the constitutionality of revenue bond financing of two retail stores. It held that, under *Paley* and *McMackin*, such a project clearly has a "public purpose." It rejected a restrictive test proposed by an objector, which would have required a showing that the private party had been "induced" to locate in the area by the issuance of bonds. Likewise, defendants' arguments on equal protection may be presented summarily, since the plaintiffs have raised no authority on this issue. Under both the State and Federal constitutions, basic equal protection analysis examines whether the government action in question rationally furthers some legitimate, articulated State purpose. *Confederation of Police v. City of Chicago* (N.D. Ill. 1980), 481 F. Supp. 566, 568; *People v. Finley* (1980), 82 Ill. App. 3d 307, 402 N.E.2d 769; *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278; *People v. Grant* (1978), 71 Ill. 2d 551, 377 N.E.2d 4.

■ Since the Act promotes legitimate State purposes in a rational manner, it does not pose a denial of equal protection. Bond-funded projects will undoubtedly create a competitive impact on already existing businesses in the State. This impact does not constitute arbitrary or invidious discrimination against such businesses. It is an incidental side effect in accomplishing the legislative purposes of the Act—reducing unemployment, expanding commerce, and enlarging municipal tax bases.

In our opinion the Act discriminates against no one. The plaintiffs are capable of applying for municipal bond financing to expand or improve their businesses, exactly as the defendants have done. Their allegation that the Act denies them equal protection is groundless, and we believe their complaint was properly dismissed.

■ Finally, the plaintiffs' complaint alleges that, prior to approving the issuance of the bonds, the Princeton City Council held meeting to discuss the matter without giving public notice of those meetings. The plaintiffs alleged that, if such unannounced meetings occurred, they were in violation of the Illinois Open Meetings Act (Ill. Rev. Stat. 1981, ch. 102, par. 41 *et seq.*). The plaintiffs sought a declaratory judgment that such meetings were in violation of law.

The circuit court ruled, in entering judgment on the pleadings, that any such violations would not invalidate the issuance of the bonds. We believe this ruling was correct, on the basis of the law in effect when the cause of action arose. Recent decisions provide that actions taken by a public agency at meetings held in violation of the Open Meetings Act were not invalid. *Board of Education v. County Board of School Trustees* (1978), 60 Ill. App. 3d 415, 376 N.E.2d 1054; *In re Organization of Byron Park District* (1978), 67 Ill. App. 3d 61, 385 N.E.2d 67; *Ciacco v. City of Elgin* (1980), 85 Ill. App. 3d 507, 407 N.E.2d 108; *People ex rel. Byron v. Board of Trustees* (1980), 90 Ill. App. 3d 88, 412 N.E.2d 1188; *Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 421 N.E.2d 285.

The rule of these decisions has since been modified by a statutory amendment which took effect on January 1, 1982. The amendment (Pub. Act 82—378) provides as follows:

"(c) The court, having due regard for orderly administration and the public interest, as well as for the interests of the parties, may grant such equitable relief as it deems appropriate, including issuance of a writ of mandamus requiring that a meeting be open to the public, granting an injunction against future violations of this Act, ordering the public body to make available to the public such portion of the minutes of a meeting as is not authorized to be kept confidential under this Act, or declaring null and void any final action taken at a closed session in violation of this Act." (Ill. Rev. Stat. 1981, ch. 102, par. 43(c).)

Plaintiffs admit that their cause of action arose before this amendment took effect, but urge that it should be given retroactive application.

We note, however, that in the absence of express language declar-

ing otherwise, an amendatory act is ordinarily construed as being prospective in operation. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 415 N.E.2d 1034.) The amendment to the Open Meetings Act in question here contains no express declaration that the law should work retroactively, and therefore we believe the standard presumption should apply. Moreover, the legislature provided an effective date four months after the law was passed, thus indicating its purpose that the amendment should apply prospectively only. See Pub. Act 82—378.

A prospective application of the amendment is further necessitated by the potentially disruptive effects of retroactivity. *In re Organization of Byron Park District* (1978), 67 Ill. App. 3d 61, 385 N.E.2d 67.

It is apparent here that the defendants have entered into a tripartite agreement whereby the city of Princeton promised to issue bonds, the Citizens First National Bank of Princeton promised to purchase those bonds, and the Judges promised to use the proceeds of the sale of the bonds to construct a specified facility. Each of these parties can enforce the obligations of the others. Thus, they all enjoy vested contract rights, which could be destroyed if this court grants retroactive application to the amendments to the Open Meetings Act. Such impairment of contract rights, we believe, is unconstitutional under both the State and Federal constitutions. Ill. Const. 1970, art. I, sec. 16; U.S. Const. art. I, sec. 10, cl. 1; *McAleer Buick-Pontiac Co. v. General Motors Corp.* (1981), 95 Ill. App. 3d 111, 419 N.E.2d 608.

For the foregoing reasons the judgment of the circuit court of Bureau County is affirmed.

Affirmed.

ALLOY and STOUDER, JJ., concur.