THE METHODIST MEDICAL CENTER OF ILLINOIS, Plaintiff and Counterdefendant-Appellee, v. LARRY T. TAYLOR et al., Defendants and Counterplaintiffs-Appellants.

Third District    Nos. 3—85—0388, 3—85—0390 cons.

Opinion filed January 14, 1986.

John C. Parkhurst and Vance C. Parkhurst, both of Bartley, Fraser, Parkhurst & Hession, of Peoria, for appellants.

Daniel L. Johns and Kevin D. Schneider, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This action was commenced in the circuit court of Peoria County by the plaintiff, Methodist Medical Center, to recover from the defendants, Larry T. Taylor and Linda J. Taylor, a portion of an unpaid hospital bill. The defendants filed several affirmative defenses to the complaint and filed a countercomplaint against the plaintiff hospital. The circuit court dismissed the affirmative defenses and the countercomplaint. The matter is before this court on two interlocutory appeals, the dismissal of the counterclaim under Supreme Court

Rule 304 and the dismissal of the affirmative defenses under Supreme Court Rule 308. Both appeals were consolidated pursuant to our order of August 26, 1985, and the consolidated appeal bears docket No. 3—85—0388.

The plaintiff hospital rendered services to Larry T. Taylor and billed Mr. Taylor in the amount of $30,032.45. Of that amount, a balance of $6,486.11 remains unpaid. The plaintiff brought suit on a contract theory for the balance against Mr. Taylor, and against Linda J. Taylor, who at the time of her husband's hospitalization executed a document entitled "Patient Admission, Financial and Insurance Agreement."

The defendants responded to the complaint with six affirmative defenses. They allege in those defenses that the hospital's billing policy violates the Social Security Act (Medicare) and its supporting regulations, violates the equal protection and due process clauses of the United States and Illinois constitutions, violates the public policy of the State of Illinois and constitutes an unenforceable adhesion contract. The factual allegations which support these defenses are set forth in the pleadings:

> "[T]he Plaintiff Hospital has engaged in a practice known as 'cost shifting' which consists of regularly accepting from the Secretary of the Department of Health and Human Services in full payment for delivering its supplies and services to its Medicare patients less than its necessary costs of such delivery to its Medicare patients and less than it is entitled to receive for treating its Medicare patients, while regularly and unfairly shifting a portion of the cost of caring for its Medicare patients, regardless of their ability to pay, to its privately insured patients, such as Defendant Larry Taylor, and other non-Medicare patients, regardless of their ability to pay."

The counterclaim, in which the counterplaintiffs seek to recover for themselves and others similarly affected, alleges the same factual basis.

The circuit court, in an order dated April 4, 1985, dismissed each affirmative defense as well as the countercomplaint.

The payment which the plaintiff hospital receives from the Secretary of the Department of Health and Human Services which was referenced in the defendants' above-quoted allegations is determined according to statute as follows:

> "(v) Reasonable costs. (1)(A) The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the effi-

cient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services; \*\*\*. \*\*\* Such regulations shall (i) take into account both direct and indirect costs of providers of services (excluding therefrom any such costs, including standby costs, which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance programs established under this subchapter (42 U.S.C. Sec. 1395 et. seq.)) *in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by such insurance programs \*\*\*."* (Emphasis added.) (42 U.S.C. sec. 1395x(v)(1)(A) (1982).)

The regulations referred to in the Code have been promulgated by the Secretary, and those regulations provide, in part:

"(a) \*\*\* All necessary and proper expenses of an institution in the production of services, including normal standby costs, are recognized. *Furthermore, the share of the total institutional cost that is borne by the program is related to the care furnished beneficiaries so that no part of their cost would need to be borne by other patients."* (Emphasis added.) (42 C.F.R. sec. 405.402(a) (1984).)

The defendants contend that although the costs which the Secretary of Health and Human Services pays to hospitals through the Medicare program are intended to be that "share of the total institutional costs" related to the Medicare patient, they are in truth less and the non-Medicare patient is forced to pay the difference.

■ In their first affirmative defense, the defendants allege that this cost-shifting by the plaintiff is unlawful under the above-quoted excerpts from the United States Code and regulations. A careful analysis of the language relied on by the defendants discloses that the Code and regulations are intended as a direction to the Secretary of Health and Human Services, not as a limitation on the billing practices of hospitals and other health care providers who receive reimbursement from the Medicare program. It is a cardinal rule of statutory construction that the court should seek to ascertain and give effect to legislative intent. However, in so doing, the court

should not create new rights or limitations not suggested by the language. (*Jackson v. Navik* (1974), 17 Ill. App. 3d 672, 308 N.E.2d 143.) Nothing in the language of the Code indicates an intention to proscribe the billing practices of health care providers. To infer such an intention—to suggest that Congress would adopt a policy with such profound impact without a more explicit enactment—would be an abuse of the court's responsibility for statutory construction. We do not agree with the defendants that the cited sections of the Code and regulations were intended to make certain hospital billing practices to non-Medicare patients unlawful.

■ The same Code and regulations are relied upon by the defendants as a basis for their countercomplaint against the plaintiff. Certain statutes imply a private cause of action. The United States Supreme Court has developed a four-part test to determine whether a private cause of action may be implied. (*Cort v. Ash* (1975), 422 U.S. 66, 45 L. Ed. 2d 26, 95 S. Ct. 2080.) The first part of that test requires the plaintiff to be a member of the class for whose special benefit the statute was enacted. The Medicare program was established for the benefit of:

> "(1) individuals who are age 65 or over and are eligible for retirement benefits *** (2) individuals under age 65 who have been entitled for not less than 24 months to benefits under subchapter II of this Act [42 U.S.C. sec. 401 et seq.] *** and, (3) certain individuals who do not meet the conditions specified in either clause (1) or (2) but who are medically determined to have end stage renal disease." (42 U.S.C. sec. 1395c (1982).)

The allegations of the plaintiffs' countercomplaint do not establish that Mr. Taylor was a member of any of the three classes of individuals who were the intended beneficiaries of the Medicare legislation. Accordingly, the countercomplaint is not sufficient under *Cort* to allege an implied private cause of action, and the circuit court's order of dismissal was correct.

■ In the defendants' second, third and fourth affirmative defenses, they allege that the plaintiff's billing practices violate the equal protection and due process clauses of the United States and Illinois constitutions. Both clauses under both constitutions stand as a prohibition against governmental action, not action by private individuals. (*USA I Lehndorff Vermoegensverwaltung GmbH & Cie v. Cousins Club, Inc.* (1976), 64 Ill. 2d 11, 348 N.E.2d 831; *Potter v. Judge* (1983), 112 Ill. App. 3d 81, 444 N.E.2d 821.) The plaintiff is a private Illinois corporation. The defendants posit that because the plaintiff hospital received substantial revenues from public tax dol-

lars—through Medicare and other government sponsored health care programs—and because it is licensed, regulated and inspected by government departments, the private institution is in fact acting under color of State law. In *Doyle v. Unicare Health Services, Inc.* (N.D. Ill. 1975), 399 F. Supp. 69, *aff'd* (7th Cir. 1976), 541 F.2d 283, a similar contention was rejected. The *Doyle* court cited numerous authorities that unanimously reached the conclusion that being subject to State regulation and receiving public tax monies do not convert an otherwise private hospital into one acting under color of State law. Illinois reviewing courts are in accord. (*Jain v. Northwest Community Hospital* (1978), 67 Ill. App. 3d 420, 385 N.E.2d 108.) While it is possible for a private individual or corporation to be bound by the prohibitions of the State and Federal due process and equal protection clauses, the pleadings of the defendants measured in light of the authorities referenced above do not allege sufficient governmental action. The second, third and fourth affirmative defenses were properly dismissed.

■ In their fifth affirmative defense, the defendants allege that the cost-shifting engaged in by the plaintiff is contrary to the laws and public policy of the State of Illinois. In support of their allegation, the defendants assert that the public policy of the State is set forth in the Illinois Health Finance Authority Act (Ill. Rev. Stat. 1981, ch. 111½, par. 161 *et seq.*), an act later repealed, and in the Illinois Health Finance Reform Act (Ill. Rev. Stat., 1984 Supp., ch. 111½, par. 6501 *et seq.*). We fail to understand how an act which the legislature has expressly voted to repeal can be said to embody the current public policy of the State. The Illinois Health Finance Reform Act creates the Illinois Health Care Cost Containment Council, a body charged with the responsibility of *studying* health care financing in Illinois. The act further requires:

"In its deliberations, the Council shall consider:

\*\*\*

(2) Minimizing cost shifting between publicly supported patients and private payors." (Ill. Rev. Stat. 1983, ch. 111½, par. 6502—2(b)(2).)

As we observed earlier in this opinion, the judiciary's responsibility in statutory construction is to ascertain and give effect to legislative intent. However, in so doing, the court should not create new rights or limitations not suggested by the language. (*Jackson v. Navik* (1974), 17 Ill. App. 3d 672, 308 N.E.2d 143.) To infer a legal prohibition of cost-shifting from a mandate to "study" such practices would indeed create new limitations not suggested by the language of the

statute. We decline to do so.

■■ In their sixth affirmative defense, the defendants allege that the document entitled "Patient Admission, Financial and Insurance Agreement," dated April 25, 1983, and signed by Linda J. Taylor is a contract of adhesion and is not enforceable. Adhesion contracts are not unlawful. The defendants cite as authority for this proposition *Eisele v. Ayers* (1978), 63 Ill. App. 3d 1039, 381 N.E.2d 21. The *Eisele* case, in *dicta,* states that

> "Courts declare adhesion contracts unlawful because the party in the superior bargaining position has taken unfair advantage of the 'adherer' by making the desired product available only if the weaker party accedes to the form of the contract." (63 Ill. App. 3d 1039, 1046, 381 N.E.2d 27.)

In fact, the *Eisele* court concluded that no adhesion contract was in issue there and did not declare the subject contract unlawful. As authority for its aside, the *Eisele* court cited *Star Finance Corp. v. McGee* (1975), 27 Ill. App. 3d 421, 326 N.E.2d 518, which only suggests that certain onerous clauses in adhesion contracts may be construed against the party with superior bargaining power. The same rule was followed in *Egyptian Seed Growers' Exchange v. Hollinger* (1925), 238 Ill. App. 178. The allegations of the sixth affirmative defense are insufficient to state a complete defense to the contract, and no ambiguities in the agreement are alleged which might provide a partial defense. The circuit court properly dismissed this portion of the defendants' pleading.

In reliance on the reasoning and the authorities hereinbefore set forth, we affirm the decision of the circuit court of Peoria County previously rendered herein.

Affirmed.

BARRY and STOUDER, JJ., concur.