ROBERT L. GREINER, Plaintiff-Appellant, v. DOMINICK'S FINER FOODS, INC., *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—93—0127

Opinion filed June 23, 1995.

David L. Axelrod & Associates, of Chicago (David A. Axelrod and Lori F. Chacos, of counsel), for appellant.

Law Office of Daniel S. Mathless, of Chicago (Daniel S. Mathless, of counsel), for appellees.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiff instituted this action seeking recovery of a commission allegedly due on the sale of a parcel of real property by defendants Dominick's Finer Foods, Inc., Dominick DiMatteo, Jr., and La Salle National Bank (the DiMatteo defendants) to defendants S.D.M.

Realty, Inc., Salvatore DiMucci, and Oak Park Trust & Savings Bank (the DiMucci defendants). After the DiMatteo defendants had been dismissed from the action, the trial court granted summary judgment in favor of the DiMucci defendants, finding that the agreement for payment of a commission to plaintiff was void and unenforceable because it was contrary to the provisions of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1981, ch. 111, par. 5701 *et seq.*) and its successor, the Real Estate License Act of 1983 (Ill. Rev. Stat. 1983, ch. 111, par. 5801 *et seq.*). Plaintiff filed a motion for reconsideration of the court's ruling and a motion for leave to file an amended complaint. The trial court denied both of these motions, and plaintiff has appealed.

Plaintiff's action arose from the sale by the DiMatteo defendants to the DiMucci defendants of an 18-acre parcel of property located in Du Page County. Plaintiff claims that in the fall of 1982, he entered into an oral agreement with the DiMatteo defendants for payment of a 10% commission if plaintiff was instrumental in procuring a purchaser of the subject property. This commission was to be paid at the closing of any sale or upon execution of a contract to purchase the property. In December 1982, plaintiff procured the DiMucci defendants as prospective purchasers of the property, and the DiMucci defendants tendered a proposed written contract for the purchase of the property to the sellers. At this time, plaintiff was a licensed real estate salesperson employed by Olga S. Kowaliuk, a licensed real estate broker and the owner of Suburban Industrial Realty Company. This tendered contract was not accepted by the sellers, and after the initial contract was submitted, plaintiff was not involved in the negotiations between the parties.

Eighteen months later, on May 29, 1984, the DiMatteo defendants and the DiMucci defendants entered into a contract, the articles of agreement for deed, for the sale of the property to the DiMucci defendants. At the time the articles of agreement were executed by the buyers and sellers of the property, plaintiff was a licensed real estate salesperson sponsored by Brooks Kellogg, a licensed real estate broker and part owner of Plaza Partners, Inc.

The articles of agreement executed by the buyers and sellers included a provision which stated as follows:

> "Seller represents to the Buyer that it has not dealt with any real estate broker or any other party that may be entitled to a brokerage commission or finders fee in connection with any aspect of this Agreement or the transaction contemplated hereby and agrees to indemnify and hold the Buyer harmless from any liability arising out of a breach of said representation. Buyer

represents that the only broker that it has dealt with that may be entitled to a brokerage commission is Robert Grenier [*sic*] and that no other party is entitled to brokerage commission or finders fee in connection with this Agreement or the transaction contemplated hereby. Buyer agrees to pay any commission or fee due Robert Grenier [*sic*] and agrees to indemnify and hold Seller harmless from and against any claim for commission or fee by Robert Grenier [*sic*] or from any liability arising out of a breach of Buyer's representation hereunder."

On June 6, 1985, the articles of agreement were amended by the parties to increase the purchase price, originally $1,400,000, to $1,416,500.

The DiMucci defendants ultimately purchased the subject property in June 1987. Plaintiff was not informed by either party of the sale of the property until after the closing, and no real estate commission was ever paid to plaintiff for his efforts in locating a buyer.

Plaintiff initially filed a three-count complaint against the DiMatteo and the DiMucci defendants, asserting that they were liable to him for a commission on the sale of the property. Count I was directed against the sellers of the property and alleged that they had breached an oral agreement to pay plaintiff a commission in the amount of 10% of the purchase price in the event that plaintiff was instrumental in procuring a purchaser for the subject real estate. Count II was directed against the buyers of the property and alleged that the buyers had breached their obligation under the sales contract to pay the plaintiff's commission. The claim asserted in count II was premised upon plaintiff's contention that he was a third-party beneficiary of the sales contract between the buyers and the sellers of the property. Count III sought punitive damages and alleged that the buyers had acted willfully and maliciously in embarking upon a course of conduct designed to interfere with plaintiff's contractual right to the commission on the sale.

The DiMatteo defendants, sellers of the real estate, filed an answer denying the substantive allegations in the complaint and asserting affirmative defenses to plaintiff's claims. These affirmative defenses included the contention that the buyers of the property, the DiMucci defendants, had assumed the obligation to pay any commission due plaintiff. The DiMatteo defendants were voluntarily dismissed from the action in 1990 pursuant to section 2—1009 of the Code of Civil Procedure. 735 ILCS 5/2—1009 (West 1992).

The DiMucci defendants filed a section 2—619 motion to dismiss, asserting that plaintiff was precluded from recovering the commission because he was not a licensed broker at the time he performed

services on behalf of the sellers. The DiMucci defendants also asserted that any alleged agreement for payment of a commission between plaintiff and the sellers of the property, the DiMatteo defendants, was void where the licensing statute precluded a salesperson from collecting a commission from any person other than his employing broker.

Plaintiff responded by alleging that he was a licensed/registered real estate salesperson from 1972 through March 1987, and he has been a licensed real estate broker from August 22, 1986, to the present. Plaintiff asserted that during 1981 and 1982 he was sponsored by Suburban Industrial Realty Co. In 1983, plaintiff was sponsored by Brooks L. Kellogg of Plaza Partners, Inc. Plaintiff argued that the licensing statute permitted recovery of a commission by a licensed/registered salesperson.

In their reply, the DiMucci defendants asserted that the complaint did not include plaintiff's sponsors as parties to the action, but sought a commission in his own name and on his own behalf, and that the complaint did not contain an allegation that plaintiff had acted under the supervision of a broker. Defendants again asserted that the oral agreement for brokerage services was void.

On June 8, 1988, the DiMucci defendants' motion to dismiss was denied. Defendants thereafter filed an answer which denied the substantive allegations in the complaint. The DiMucci defendants subsequently filed a motion for summary judgment which raised essentially the same grounds asserted in their prior motion to dismiss.

In response to this motion for summary judgment, plaintiff filed the affidavit of Olga S. Kowaliuk, who attested that she had been a licensed real estate broker since 1962 and had been the owner of Suburban Industrial Realty Co. Kowaliuk also attested that from 1981 to 1983 she employed plaintiff as a licensed real estate salesman; plaintiff had informed Kowaliuk of his work with the sellers; she and plaintiff had agreed that during the time plaintiff worked for her, any real estate commissions generated by him would be the property of Suburban Industrial Realty; any such commissions were to be paid directly to Suburban Industrial Realty and a certain percentage of the commission would subsequently be distributed to plaintiff as compensation for his efforts; upon plaintiff's departure from Suburban Industrial Realty in 1983, Kowaliuk orally assigned to plaintiff all of her right to any commission due on the sale of the subject property being handled by plaintiff on behalf of Suburban Industrial Realty.

Plaintiff also submitted the affidavits of Brooks Kellogg and Irving Lazarus, principals in Plaza Partners, Inc., a real estate broker-

age firm. Kellogg and Lazarus attested that they had a similar arrangement with plaintiff to that described in Kowaliuk's affidavit. Both Kellogg and Lazarus averred that plaintiff had been sponsored by their brokerage firm from May 1983 through December 1985 and that plaintiff had informed them of his dealings with the buyers and sellers of the subject property. Kellogg and Lazarus attested that they had agreed with plaintiff that any commission generated by plaintiff would be the property of Plaza Partners, Inc., including any commission due on the sale of the subject property. After plaintiff left Plaza Partners, Inc., Kellogg and Lazarus assigned to the plaintiff all rights to any commission on the sale of the subject property.

Plaintiff also submitted his own affidavit which attested that he had requested DiMucci to designate that the payment of any commission on the sale be paid to his sponsoring broker, but DiMucci refused and insisted that plaintiff's name be specified as the recipient of the commission in the proposed written contract tendered in December 1982.

On September 15, 1992, the trial court entered summary judgment in favor of the DiMucci defendants and against plaintiff. Thereafter, plaintiff filed a motion for reconsideration and a motion for leave to file an amended complaint. The five-count proposed amended complaint presented claims under the following theories: third-party beneficiary, *quantum meruit*, unjust enrichment, breach of implied contract, and interference with plaintiff's contractual rights. The trial court denied these motions, and plaintiff has appealed.

We initially address plaintiff's claim that the trial court erred in finding that any agreement for payment of a commission between the plaintiff and the defendants was void and unenforceable because it was contrary to the provisions of the statutes governing the licensing and conduct of real estate brokers and salespeople.

The Real Estate Brokers and Salesmen License Act was effective from 1973 through 1983. That statute was repealed effective January 1, 1984, and was succeeded by the Real Estate License Act of 1983. The Real Estate Brokers and Salesmen License Act was in effect at the time plaintiff and the property sellers allegedly agreed to the payment of the commission if plaintiff was instrumental in procuring a purchaser for the subject property. The Real Estate License Act of 1983 became effective January 1, 1984, and governed the actions of the parties at the time the buyers and sellers of the property executed the articles of agreement for the sale of the parcel.

Section 7 of the earlier statute and section 7 of the later statute provide that no action or suit shall be instituted nor recovery had by any person for compensation for services rendered unless such person

was duly licensed/registered as a real estate broker or real estate salesman **prior** to the time of offering to perform any such service or procuring any promise or contract for the payment of compensation for any such service. (Ill. Rev. Stat. 1981, ch. 111, par. 5714; Ill. Rev. Stat. 1983, ch. 111, par. 5807.) These statutory sections prohibit recovery of compensation by unlicensed/unregistered persons and are clearly designed to ensure that all brokers and salespersons are properly licensed.

Plaintiff asserts that because he was a licensed/registered salesperson from 1973 through March 1987, he was entitled to recover the commission promised by the sellers and assumed by the buyers of the property. Defendants argue, however, that plaintiff had acted as a broker in dealing with the seller of the property despite the fact that he did not obtain his broker's license until 1986, four years after the initial dealings were commenced and two years after the articles of agreement were executed by the buyers and sellers.

The statute defines a real estate "salesperson" as any individual, other than a broker, who is employed by a broker or is associated by written agreement with a real estate broker as an independent contractor and participates in those activities authorized for a broker. Examination of the complaint reveals that although plaintiff did not allege that he had been employed by any broker or that he was supervised by a sponsoring broker in his dealings with the seller of this parcel of property, he did present the affidavits of Kowaliuk, Kellogg, Lazarus, and himself which all attested that plaintiff had been employed by licensed real estate brokers during the entire time that he dealt with the buyers and sellers of the subject property. Consequently, the record established that plaintiff was a licensed/registered salesperson during the relevant time period. As a result, the above statutory provisions were not applicable to plaintiff's situation and did not preclude him from recovering a commission on the sale of the subject property.

The two relevant statutes also contain provisions which state that no licensed real estate salesperson shall accept a commission or valuable consideration for the performance of any of the specified activities from any person, except the licensee's employer, a licensed broker. Ill. Rev. Stat. 1981, ch. 111, par. 5727(d); Ill. Rev. Stat. 1983, ch. 111, par. 5812(d).

In construing statutes, the role of the courts is to ascertain and give effect to the intent of the legislature. (*Methodist Medical Center v. Taylor* (1986), 140 Ill. App. 3d 713, 716, 489 N.E.2d 351; *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1985), 135 Ill. App. 3d 543, 552, 481 N.E.2d 277.) The plain meaning of the language used by

the legislature is the safest guide in construing any act, and the court has no right to read into the statute words that are not found therein either by express inclusion or by fair implication. (*Indian Valley Golf Club, Inc.*, 135 Ill. App. 3d at 552; *Illinois Publishing & Printing Co. v. Industrial Comm'n* (1921), 299 Ill. 189, 196, 132 N.E. 511.) The words of a statute must be read in light of the purposes to be served, and those words must be read to reach a commonsense result. *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 493, 389 N.E.2d 540.

The statutory sections at issue here are intended to protect those who deal with real estate brokers and salespersons. The plain meaning of these sections specifically precludes a real estate salesperson from dealing directly with a broker's client and from collecting the commission on his own behalf.

The complaint in the instant case alleged that the seller's promise to pay the commission was made to plaintiff directly. No mention was made in the complaint of any employing or sponsoring broker of the plaintiff. This circumstance is precisely the type of situation contemplated and specifically prohibited by the above statutory sections.

■Despite the affidavits of Kowaliuk, Kellogg, and Lazarus, which were executed in 1992, the record contains no evidence that plaintiff's employing broker had engaged in any negotiations or had entered into any agreements with either of the parties to this real estate transaction. The record also does not indicate that there was any agreement providing for payment of the sales commission to the employing broker who would, in turn, compensate the plaintiff in the appropriate amount. In addition, the record does not reflect that plaintiff's employing broker rendered any services on behalf of either of the parties to the real estate sales transaction or that plaintiff had acted under the supervision and on behalf of a licensed broker.

Rather, the record before this court established that plaintiff dealt directly with the DiMatteo defendants and expected to receive his commission from them. Because such an arrangement was prohibited under the licensing statutes (Ill. Rev. Stat. 1981, ch. 111, par. 5727(d); Ill. Rev. Stat. 1983, ch. 111, par. 5812(d)), the agreement was void and unenforceable. (*Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 121-22, 619 N.E.2d 732.) Consequently, the trial court acted properly in entering summary judgment in favor of the DiMucci defendants.

Plaintiff also asserts that the trial court erred in denying plaintiff leave to file an amended complaint.

Section 2—1005(g) permits amendment of pleadings before or after judgment where just and reasonable. (735 ILCS 5/2—1005(g) (West 1992).) Plaintiff contends that the proposed amended complaint would have cured any pleading defect in the original complaint and that the trial court acted improperly in denying him leave to file this proposed amended complaint. The five-count proposed amended complaint presented claims under the following theories: third-party beneficiary, *quantum meruit,* unjust enrichment, breach of implied contract, and interference with plaintiff's contractual rights.

Allowing plaintiff to proceed under the theories presented in the proposed amended complaint would circumvent the statutory sections which prohibit a salesperson from dealing directly with a client. (*Cf. Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 487, 408 N.E.2d 1069.) It is axiomatic that the law will not allow a party to do indirectly that which he is precluded from doing directly. Thus, the trial court properly denied plaintiff's motion for leave to file the amended complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

EGAN and RAKOWSKI, JJ., concur.