Porter F. Leach, Appellee, v. Federal Life Insurance Company, Appellant.

Gen. No. 39,624.

Opinion filed June 21, 1938.

MacNAMARA & KUTAK, of Chicago, for appellant; JEROME F. KUTAK, of counsel.

BELL, BOYD & MARSHALL, of Chicago, for appellee; DAVID A. WATTS and VICTOR M. HARDING, JR., of counsel.

Mr. Justice John J. Sullivan delivered the opinion of the court.

Plaintiff, Porter F. Leach, filed a complaint in equity to require defendant, Federal Life Insurance Company, to maintain in force its disability insurance policy theretofore issued to him, which defendant claimed had lapsed for nonpayment of the annual premium due April 30, 1936, and to order defendant to apply a sufficient portion of the disability benefits due plaintiff from defendant prior to the purported lapsation in payment of the aforesaid premium that fell due while plaintiff's claim for disability benefits was pending.

The defenses advanced by defendant, as set forth in its answer are as follows:

"Defendant admits that insured became ill with neuritis and that he suffered from said disease until February 12, 1936; admits allowing Three Hundred Ten and No/100 Dollars ($310) on June 4, 1936, but denies that said disability benefit was due and owing from the defendant company to the plaintiff before said date, and denies the other allegations made in said paragraph.

"Defendant admits that said policy lapsed for nonpayment of premium at the expiration of the grace period, namely on May 31, 1936, but denies that it had any funds belonging to the plaintiff prior to that period which it could properly apply in payment of said premium, and denies all other allegations in said paragraph."

After hearing the court entered a decree validating the policy and ordered defendant to apply $110.50 on account of the premium due on the policy April 30, 1936, out of the $310 which defendant admitted was due plaintiff in payment of his disability claim and to pay plaintiff $199.50, the balance of said $310. This

appeal seeks to reverse the decree. The cause was heard upon a somewhat lengthy written stipulation of facts, of which we deem the following material and sufficient for an understanding of the issues involved.

April 30, 1930, plaintiff applied to defendant for an insurance policy which provided benefits for accidental loss of life, limb or sight, and loss of time through sickness or accident. The policy, issued and dated the same date, was to remain in force until plaintiff was 60 years of age, provided premiums were continuously paid. It was not cancellable without the consent of the insured. The annual premium of $110.50 was payable on or before April 30 of each year and in case of default in the payment of any annual premium on its due date a grace period of 31 days was provided in the policy for such payment. For loss of time under the terms of the policy plaintiff was to receive $150 a month, which was to be paid after certain conditions were complied with, such as giving notice of loss to the company, furnishing affirmative proof of loss and permitting examination of the person of the insured by the defendant's physician. Sec. 10 of the policy provided as follows:

"Upon request of the Insured and subject to due proof of loss all of the accrued indemnity for loss of time on account of disability will be paid at the expiration of each thirty days during the continuance of the period for which the Company is liable, and any balance remaining unpaid at the termination of such period will be paid immediately upon receipt of due proof."

The policy provided further that all indemnity other than loss of life was payable to the insured; and that the falsity of any statement in the application materially affecting either the acceptance or the risk or the hazard assumed, or made with intent to deceive, "shall bar all right to recovery under the policy."

June 18, 1935, plaintiff notified defendant that he was ill from neuritis and was furnished various forms to complete in accordance with the policy provisions. January 25, 1936, he delivered to defendant on the forms furnished him, his preliminary proof of claim, stating the sickness from which he suffered and for which he had been confined in a hospital from December 18, 1935, to the time of the presentation of his claim. His proof of claim was supplemented by a certificate from both his physician and employer. March 2, 1936, plaintiff delivered to defendant his "Proof at Termination of Diability," which stated that the period of his disability had terminated on February 12, 1936. The stipulation then enumerated certain physical ailments of plaintiff, which were disclosed either by his admission on the occasion of a physical examination made of his person on March 10, 1936, by defendant's examining physician or as the result of defendant's investigation of the records of hospitals in which plaintiff had been treated. Plaintiff's admission and defendant's investigation of the hospital records revealed certain physical conditions and ailments of plaintiff not stated by him in his application for the policy. Defendant's request of plaintiff of April 3, 1936, to examine the records of the U. S. Veterans' Bureau concerning him was immediately granted. Pursuant to the permission granted, these records were obtained and examined by defendant on May 27, 1936. On May 31, 1936, the grace period provided in the policy for the payment of the premium due April 30, 1936, expired without said premium having been paid. On June 4, 1936, defendant wrote plaintiff that his claim had been approved and inclosed its check for $310 in payment of his claim for disability benefits. On June 8, 1936, plaintiff, after receiving defendant's check, sent his own check for $110.50 in payment of the premium due

on his policy April 30, 1936, with a grace period of 31 days as above indicated. On that same day defendant returned plaintiff's check and informed him that his policy had lapsed for nonpayment of the annual premium due April 30, 1936. Plaintiff did not cash or use the check for $310 delivered to him by defendant in payment of his disability benefits but tendered same to defendant in open court upon the trial of this case.

Defendant contends that it "had no money in its possession that was absolutely due before the expiration of the grace period"; that "the pending claim did not create a debt"; that "the defendant was not justified in assuming that the disability benefits, if any, should be applied to the premium"; and "that the defendant would have been entitled to a rescission of the contract if the plaintiff had tendered the premium before the policy lapsed."

Plaintiff's theory as stated in his brief is that "an insurer owing an insured a sum in excess of premiums falling due cannot forfeit the policy for nonpayment of premiums"; and that "the fact that the defendant questioned the validity of the policy did not extend the time of the accrual of defendant's liability to pay disability benefits."

It will be noted that on January 25, 1936, plaintiff delivered to defendant on the latter's forms his preliminary proof of claim of loss because of the sickness from which he was suffering and for which he had been confined to a hospital from December 18, 1936, until the time his original claim was presented; that his claim was supplemented by certificates from both his physician and employer as to his illness; that on March 2, 1936, he delivered to defendant his "Proof at Termination of Disability," advising that the disability period had terminated February 12, 1936; and that no money in payment of his claim was tendered

to him until June 4, 1936, when he was advised that his claim was approved and defendant's check for $310 was forwarded in payment thereof. It will be noted further that the check for $310 in payment of plaintiff's claim was delivered just four days after the expiration of the grace period on the premium due April 30, 1936, for the failure to pay which defendant declared the policy forfeited. During the period of more than three months, from January 25, 1936, when he first filed his claim, until the same was finally approved on June 4, 1936, and defendant's check for $310 delivered to him, plaintiff was not advised that his proof of claim was in anywise insufficient. Defendant's physician examined plaintiff on March 10, 1936, and the insurance company received plaintiff's permission to inspect his medical record in the U. S. Veterans' Bureau early in April, 1936, but at no time did it question the validity of plaintiff's proof of loss.

Defendant admits in its brief that where money is absolutely due from an insurance company to a policyholder before the due date of a premium, the company should apply the credit, if necessary, to save the policy; and such application will be conclusively presumed to have been made. (*Kern v. Western Life Ins. Co.*, 192 Ill. App. 96.) However, it is urged that this principle is confined to life insurance policies and applies only where the money owing is for dividends. The cases cited by defendant itself refute this contention as do the authorities generally.

In *Long v. Monarch Accident Ins.*, 30 F. (2d) 929 (C. C. A. 4), which involved a health and accident policy, the court said at p. 930: ''We start with the general principle that in the absence of special agreement, failure to pay an insurance premium when due *ipso facto* forfeits the policy.

''. . .

"It is true that the aforegoing principle has been qualified to this extent: That if money is absolutely due by the Company to the policyholder when a premium falls due, the Company should apply the same towards the premium and thereby, if possible, avoid forfeiture of the policy. This includes any excess of premiums paid, dividends, profits, benefit payments, and the like, but the offsetting of such credits will only be required where the company actually has in its hands at the time funds which are absolutely due and payable." (See also *Ruderman v. Massachusetts Accident Co.*, 118 N. J. Eq. 461, 180 Atl. 237; *Birlew v. Mutual Ben. Health & Accident Ass'n*, 53 Idaho 472, 24 P. (2d) 677.)

The question then is whether the defendant was absolutely liable to plaintiff for disability payments at the time the premium fell due on April 30, 1936. The policy provides that the insurance company shall pay the insured within 30 days after due proof of loss and it was not contended in the trial court nor is it here that plaintiff did not file due proof of his claim. In fact, it was admitted that such proof of loss was filed and the trial court so found. It follows that defendant under the terms of the policy became liable to pay plaintiff's claim to the extent of $310 by April 2, 1936, at the very latest, since that was 30 days after plaintiff submitted final proof of his loss.

Defendant's answer averred no defense on the ground that the policy was invalid because of purported misrepresentations on the part of plaintiff in his application for same and since no valid excuse appears in the record for the failure to pay the disability benefits as and when the policy provided they should have been paid, we are impelled to hold that there was absolutely due to plaintiff on May 31, 1936, when it is claimed plaintiff's policy was forfeited for lapsation, $310, out

of which the insurance company was in equity and good conscience obligated to apply $110.50 to keep the policy alive.

Whatever purpose defendant intended to serve by its protracted investigation of the records of the various hospitals as to plaintiff's previous illnesses and medical and surgical history, it clearly appears that neither such investigations nor the result thereof could under the facts in this case extend the time of the accrual of defendant's liability to pay the disability benefits due plaintiff or have any possible bearing on the issues raised on the pleadings in this cause. It is significant that the claim was allowed and the check for the amount of same forwarded four days after the expiration of the grace period for the payment of the premium in question and defendant's "hesitation" in approving and paying the claim is also highly significant in the light of its attempt to forfeit the policy.

There is not a particle of evidence in the record to justify defendant's failure and refusal to make the disability payments to plaintiff when due. If such payments had been made before the final due date of the premium, it is fair to assume that plaintiff would have paid some himself. Defendant having wrongfully withheld the disability payments was obligated to pay the premium out of plaintiff's money in its hands.

Other points are urged, but in the view we take of this cause we deem it unnecessary to discuss them.

For the reasons stated herein the decree of the superior court is affirmed.

*Decree affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.