SILVIO HERNANDEZ, a Minor by and ·through his Father and Next Friend, Alberto Hernandez, Plaintiff-Appellee, v. STATE FARM INSURANCE COMPANY, Defendant-Appellant.

First District (3rd Division) No. 87—0202

Opinion filed May 18, 1988.

Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago (Victor J. Piekarski and Michael Resis, of counsel), for appellant.

Serpico, Novelle, Dvorak & Navigato, Ltd., of Chicago (Vincent Petrosino, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

The subject of this appeal is an order entered by the circuit court of Cook County granting summary judgment in favor of plaintiff, Silvio Hernandez, a minor represented by his father and next friend, Alberto Hernandez.

Plaintiff brought an action seeking a declaratory judgment of his rights under two insurance policies for uninsured motorist coverage issued by defendant, State Farm Insurance Company. The complaint alleged that the two insurance policies were in full force and effect on May 12, 1980, when plaintiff was injured in a collision with an uninsured motorist. The defendant answered the complaint denying that the policies were in effect at the time of plaintiff's accident.

Defendant subsequently moved for summary judgment alleging that both policies had effectively been cancelled by defendant on May 4, 1980, eight days prior to plaintiff's accident. Defendant's motion was supported by copies of premium notices from defendant; excerpts from the deposition of plaintiff's father; and affidavits from three of defendant's employees. Plaintiff responded to defendant's motion and thereafter filed a cross-motion for summary judgment. Defendant responded to plaintiff's motion, and, after a hearing, the trial court granted plaintiff's motion for summary judgment and denied defendant's motion. On appeal, defendant argues that the trial court erred in denying summary judgment in its favor.

In the instant case, plaintiff's father obtained two insurance policies providing uninsured motorist coverage from defendant. When those policies were purchased, plaintiff's father applied for and received the right to pay for the policies on a monthly payment plan. Under that plan, he was not required to pay a large premium at the beginning of the policy period. Instead, he was obligated to make smaller premium payments each month throughout the policy period. The insurance policies themselves did not provide when the monthly payments were due, but plaintiff's father testified at his deposition that he received premium notices from defendant each month. At the outset, plaintiff's father paid the premiums for the first month of coverage and for an additional month.[1] Thereafter, he received premium notices each month from defendant. The premium for the additional month has been referred to by the parties as a reserve.

Defendant's motion for summary judgment was supported by the affidavit of Donna Mattingly, a monthly payment plan specialist, in which she stated that, pursuant to defendant's billing procedure, plaintiff's father was required to pay his premiums by the third day of every month. Also supporting defendant's motion were copies of two notices from defendant indicating that monthly premium payments were due on March 3, 1980, and on April 3, 1980, respectively.

Plaintiff's father admitted in his deposition that he did not make a premium payment by March 3, 1980. Because defendant did not receive that payment, a notice was sent to plaintiff's father stating that premiums for two months were due April 3, 1980. Plaintiff's father paid one monthly premium on or about March 25, 1980. Thereafter,

---

[1]Defendant asserts in its initial brief before this court that these two premiums were for the first two months of coverage. We do not, however, find any evidence in the record to support this claim, and it was not raised before the trial court. We will, therefore, consider the second premium a reserve, as did the parties before the trial court.

defendant sent another notice indicating that the balance, the second monthly premium, was due on April 15, 1980. In her deposition, Mattingly explained that the payment of one premium on March 25, 1980, constituted a partial payment for the two premiums owed. Consequently, defendant sent the second notice for the balance reflecting an extended due date of April 15, 1980. Plaintiff's father made no payment at all in April of 1980.

Pursuant to section 143.15 of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 755.15), defendant sent plaintiff's father notices on April 21, 1980, advising him that, due to his nonpayment of premiums, the two policies would be cancelled as of May 4, 1980. No payment was tendered by plaintiff's father until May 15, 1980, when he gave his insurance agent a check for two monthly premiums. Defendant returned the uncashed check to plaintiff's father with a letter indicating that the policies had been cancelled as of May 4, 1980.

■■ Plaintiff asserts that the reserve premium paid when the policies were purchased was to have been applied to cover the unpaid April premium and, therefore, plaintiff would have been covered until defendant received the two premium payments on May 15, 1980. We find no evidence in the record to support this assertion. The testimony of Mattingly and the copies of the premium notices establish that the insurance premiums were due on the third day of every month. Mattingly acknowledged that the reserve was applied to cover the unpaid April premium. Yet, that afforded coverage only to May 3, 1980. Defendant sent plaintiff's father the cancellation notice on April 21, 1980, and because no payment was received thereafter, the policies were effectively cancelled as of May 4, 1980.

■ We must also reject plaintiff's contention that the defendant's mailing of the cancellation notices was premature and that defendant was required to send additional notices when the premiums paid, including the reserve, were fully earned. No such requirement is found in the Code or in plaintiff's policies. If this were the case, defendant would have been forced to wait until May 3, 1980, before it could send cancellation notices to plaintiff's father advising that coverage would be terminated in 10 days. Thus, defendant would be required to provide coverage for at least 10 days in a month for which no premium had been paid.

■■ ■ We do not believe this was the intent of the Illinois legislature when section 143.15 of the Code was adopted. Section 143.15 merely sets forth the procedure that an insurer must follow in order to terminate the coverage of an insured who has failed to pay the necessary premium. It is a well-established rule of statutory construction

that the court should seek to ascertain and give effect to legislative intent. In doing so, however, the court should not create new rights or limitations not suggested by the language. (*Methodist Medical Center v. Taylor* (1986), 140 Ill. App. 3d 713, 489 N.E.2d 351; *Jackson v. Navik* (1974), 17 Ill. App. 3d 672, 308 N.E.2d 143.) Nothing in the language of section 143.15 requires an insurer to delay the mailing of a cancellation notice until all premiums have been fully earned or that an insurer provide free coverage from the date of mailing the notice to the effective date of the cancellation. To infer such a requirement would be an abuse of the court's responsibility for statutory construction. *Methodist Medical Center v. Taylor* (1986), 140 Ill. App. 3d 713, 489 N.E.2d 351.

Moreover, we find that plaintiff's reliance on *Conley v. Ratayzcak* (1980), 92 Ill. App. 3d 29, 414 N.E.2d 500, is misplaced. In *Conley*, the court held that the insured was covered for an accident that occurred after a notice of cancellation had been sent. The decision was, however, based upon the court's finding that the insured's loss occurred on the same day that coverage was to be terminated pursuant to the insurer's notice. The court noted that, because no hour of cancellation was stated, the case fell within the general rule which disregards fractions of a day and the coverage, therefore, was in effect at the time of the loss. In the instant case, the plaintiff's loss occurred eight days after his coverage had effectively been terminated. The *Conley* court did not address or consider the timeliness of the insurer's notice. Consequently, *Conley* is factually distinguishable from the case at bar and is not controlling here.

█ The trial court in the instant case reasoned that the purpose of the reserve was to protect only the insured and to maintain coverage for any month in which he did not pay the premium. We cannot accept this reasoning. Rather, we believe the reserve payment was intended to protect both the insured and the insurer and to pay for coverage during the month in which the insurer gave the statutorily required 10-day notice of cancellation for nonpayment. (Ill. Rev. Stat. 1979, ch. 73, par. 755.15.) If plaintiff's father had not paid any reserve when the policies were purchased, he would have received free insurance coverage during the entire month of April 1980. Had he suffered a loss during that month, the defendant would have been obligated to adjust the loss although no premium was ever received. We conclude that the existence of the reserve did not negate the obligation of plaintiff's father to pay the April premium. Although the April coverage was ultimately paid for by application of the reserve, plaintiff's father did not pay the premium prior to the cancellation date.

Thus, the 10-day notices of cancellation were properly sent for non-payment of the April premium. The reserve ensured coverage only to May 3, 1980. Consequently, the May 15, 1980, payment of two premiums was made 11 days after the policies had been cancelled and was, therefore, untimely.

■■ Summary judgment shall be rendered if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) Because the question of insurance coverage is one of law, it may be determined on appeal independently of the judgment of the trial court. (*Illinois Casualty Co. v. Peters* (1979), 73 Ill. App. 3d 33, 391 N.E.2d 547; *In re Estate of Hoyman* (1960), 27 Ill. App. 2d 438, 170 N.E.2d 25.) Based upon the record before us we find that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law.

For the foregoing reasons, the judgment of the circuit court is reversed.

Reversed.

WHITE, P.J., and McNAMARA, J., concur.