GARY FULLER *et al.*, Plaintiffs-Appellants, v. AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, Defendant-Appellee.

Fifth District    No. 5—02—0478

Opinion filed October 21, 2003.—Rehearing denied November 21, 2003.

Mark C. Scoggins and Clay B. St. Clair, both of Crowder & Scoggins, Ltd., of Columbia, for appellants.

Beth C. Boggs, of Boggs, Boggs & Bates, L.L.C., of St. Louis, Missouri, for appellee.

JUSTICE MAAG delivered the opinion of the court:

The plaintiffs, Gary and Doree Fuller, were involved in an automobile accident with an underinsured driver on September 18, 1997, wherein Gary sustained personal injuries. The injuries were caused by the underinsured driver's negligence. It is undisputed that the insurer for the underinsured driver paid to the plaintiffs the limits of the bodily injury liability coverage afforded under that policy. The plaintiffs then made a claim against the defendant, American Standard Insurance Company of Wisconsin, for underinsured-motorist coverage. The defendant denied the claim. The plaintiffs filed a complaint for a declaratory judgment and for a vexatious and unreasonable refusal to pay, pursuant to the Illinois Insurance Code (Code) (215 ILCS 5/155 (West 1996)). Each party filed a cross-motion for a summary judgment on the issue of liability. On June 21, 2002, the circuit court entered an order granting the defendant's motion for a summary judgment and denying the plaintiffs' motion for a summary judgment. The plaintiffs appeal.

The relevant facts are as follows. When the plaintiffs initially purchased an automobile policy from the defendant, they opted for the defendant's monthly premium payment plan, which is known as the "Amplan." The Amplan specifically states as follows:

> "MONTHLY PREMIUM PAYMENTS FOR PERSONAL LINES ACCOUNT—Your account begins with an initial payment of two months [sic] premium for each policy plus an Amplan charge

to cover costs related to your account payments. The third month's payment is due approximately 30 days from the day you opened your account. Thereafter, each monthly payment pays your insurance two months in advance of your current due date."

Hence, pursuant to the Amplan, the plaintiffs were required to pay at least two months of premiums to initiate the insurance policy. Thereafter, the plaintiffs were billed on a monthly basis. According to the terms of the Amplan, the insurance was to be paid 60 days in advance.

The plaintiffs failed to pay the premium that was due on February 20, 1997. On February 28, 1997, the defendant mailed a notice of cancellation advising the plaintiffs that the policy would be cancelled on March 20, 1997, for a lack of payment. The plaintiffs paid the premiums before March 20, 1997, which prevented the policy from being cancelled. On April 20, 1997, the next premium was due. The plaintiffs failed to make this payment. The defendant sent another cancellation notice listing May 20, 1997, as the cancellation date for the nonpayment of the premium. The policy was not cancelled because the plaintiffs paid the premium before the threatened cancellation date. The plaintiffs then failed to make the May 20, 1997, premium payment. The plaintiffs were sent a notice of cancellation warning of a June 20, 1997, cancellation date. This time, the plaintiffs did not make the payment before the cancellation date, and the policy was cancelled on June 20, 1997. The policy was reinstated on July 2, 1997, when the defendant received the plaintiffs' check dated June 28, 1997. The amount that the plaintiffs paid covered their insurance from July 2, 1997, to August 2, 1997. On July 10, 1997, the defendant sent another notice of cancellation because the plaintiffs had failed to make the double premium payment that was required to initiate the policy. This notice stated that the policy would be cancelled on August 2, 1997, if an additional payment was not received. Since the plaintiffs made no further payments before the August 2, 1997, cancellation date, the policy was cancelled a second time. On August 7, 1997, the defendant sent a notice of cancellation to the lienholder.

On September 18, 1997, Gary was injured in an automobile accident that was caused by an underinsured driver. Gary sustained a broken right leg and incurred medical bills, disability, and pain and suffering. As a result of this accident, the plaintiffs sought compensation under the underinsured-motorist coverage with the defendant. The defendant denied the claim, stating that the plaintiffs' coverage had been properly and lawfully cancelled for the nonpayment of the premium prior to September 18, 1997.

In her deposition, Doree testified that she did not recall receiv-

ing the cancellation notice in the mail. She noted in her deposition that if she had received it, she would have disregarded the notice because she had previously made her payment in June 1997. Doree claimed that she contacted her insurance agency prior to September 18, 1997, because she was concerned that she had not received a recent bill. Doree stated that a secretary at the office told her not to worry about the matter until she received a bill.

The plaintiffs filed a complaint for a declaratory judgment on March 20, 1998. Thereafter, the plaintiffs filed an amended complaint adding a cause of action against the defendant under the Code (215 ILCS 5/155 (West 1998)). On March 1, 2000, the defendant filed a motion for a summary judgment. On October 31, 2000, the plaintiffs filed a motion for a summary judgment on liability. The circuit court entered its order on June 21, 2002, granting the defendant's motion for a summary judgment and denying the plaintiffs' motion for a summary judgment on liability. The plaintiffs filed a timely notice of appeal.

■ Appellate courts apply a *de novo* standard when reviewing summary judgment rulings. Where there are no genuine issues of material fact, a summary judgment is a proper method of disposing of a cause. A summary judgment is appropriate only when the pleadings, depositions, admissions, and affidavits on file, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. In response to a motion for a summary judgment, a plaintiff is not required to establish his or her case as he or she would at a trial, but he or she must present some factual basis that would arguably entitle him or her to a judgment. *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119, 128-29, 790 N.E.2d 882, 891 (2003).

The plaintiffs claim that the circuit court's June 21, 2002, order granting the defendant's motion for a summary judgment and denying the plaintiffs' motion for a summary judgment was erroneous because the cancellation notice was ambiguous and did not reasonably inform the plaintiffs that the insurance policy was in danger of being cancelled. For these reasons, the plaintiffs claim that the policy was in effect on the date of the collision. We disagree.

■ According to section 143.14 of the Code (215 ILCS 5/143.14 (West 1996)), "No notice of cancellation of any policy of insurance *** shall be effective unless mailed by the company to the named insured and the mortgage or lien holder, at the last mailing address known by the company." And section 143.15 of the Code provides, "[W]here cancellation is for nonpayment of premium, the notice of cancellation must be mailed at least 10 days before the effective date of the cancellation." 215 ILCS 5/143.15 (West 1996).

In the instant case, there is no dispute that the defendant sent a notice to the plaintiffs on July 10, 1997, that stated as follows:

| "0700—8176—01—60— SPPA—IL | | 90.27 |
|---|---|---|
| 94 GEO GEM | | |
| 0700—8176—02—63— SPPA—IL | | 91.43 |
| 93 FORD ARO | | |
| | AMPLAN MONTHLY CHARGE | 6.76 |
| | AMOUNT DUE 07-02-97 | 188.46 |
| | AMOUNT DUE 08-02-97 | 188.46 |
| | TOTAL AMOUNT DUE | 376.92 |

OUR RECORDS SHOW WE HAVE NOT RECEIVED YOUR PREMIUM. *EACH POLICY DESCRIBED ABOVE WILL BE CANCELLED ON 08-02-97 AT THE HOUR SPECIFIED IN THE POLICY. HOWEVER, RECEIPT OF $376.92 BY AMERICAN FAMILY ON OR BEFORE 08-02-97 WILL RESTORE CONTINU-OUS PROTECTION. TO REISSUE YOUR INSURANCE AFTER 08-02-97, PLEASE CONTACT YOUR AGENT.*" (Emphasis added.)

The defendant sent the aforementioned notice of cancellation because the plaintiffs had failed to make the double premium payment that was required to initiate the policy that had been cancelled. This notice stated that the policy would be cancelled on August 2, 1997, if an additional payment was not received. Since the plaintiffs made no further payments before the August 2, 1997, cancellation date, the policy was cancelled a second time. On August 7, 1997, the defendant sent a notice of cancellation to the lienholder. On September 18, 1997, Gary was injured in an automobile accident.

The plaintiffs claim that when dealing with the cancellation of a policy for the nonpayment of a premium, Illinois courts hold insurance companies to a strict standard. See *Textile Maintenance v. Industrial Comm'n*, 263 Ill. App. 3d 866, 871, 636 N.E.2d 748, 751 (1994). The plaintiffs also state that the forfeiture of an insurance contract for the nonpayment of a premium is not favored in the law, and courts are prompt to seize upon circumstances that indicate a waiver of a forfeiture. See *Van Hulle v. State Farm Mutual Automobile Insurance Co.*, 44 Ill. 2d 227, 232, 254 N.E.2d 457, 461 (1969). The plaintiffs also contend that the notice of cancellation was ambiguous and, therefore, ineffective to cancel the plaintiffs' policy of insurance, because on the reverse side of the Amplan final notice it stated as follows: "If you have already sent your payment, please disregard this notice and accept our thanks." The plaintiffs contend that since they had mailed their payment on July 2, 1997, they thought that their insurance had been paid. We disagree.

■ This is a simple case of an insurance policy that was effectively

cancelled for the nonpayment of the premium. Although the plaintiffs' attorney attempted to pose confusing questions about the notice of cancellation in an effort to create an ambiguity where none existed, the circuit court and this court have examined the deposition testimony and find that although the questions were confusing, the documents themselves were not ambiguous. Despite being warned in the cancellation notice that their policy would end on August 2, 1997, the plaintiffs did not make another premium payment to the defendant until after Gary's automobile accident on September 18, 1997, approximately 1½ months after the policy had been cancelled. Even the plaintiffs' appellate counsel admits that the plaintiffs' next payment was due on August 2, 1997. Page 11 of the plaintiffs' brief states as follows: "Plaintiffs made a $188.76 payment that was received by [d]efendant on July 2, 1997. By looking at the cancellation notice, [p]laintiffs would reasonably have believed they had already made the July 2, 1997[,] payment and that their next payment was to be due on August 2, 1997." If this is so, why do the plaintiffs argue that the notice did not reasonably apprise the plaintiffs that their policy would be cancelled on August 2, 1997, due to the nonpayment of the premium? We have reviewed the cancellation notice and find that no such ambiguity existed. The requisite "ambiguity" is "whether the relevant portion is subject to more than one reasonable interpretation, not whether creative possibilities can be suggested." *Hall v. General Casualty Co. of Illinois*, 328 Ill. App. 3d 655, 658, 766 N.E.2d 680, 683 (2002). The July 10, 1997, cancellation notice clearly stated that the policy would terminate on August 2, 1997, if $376.92 was not received before that date. The record shows that the plaintiffs failed to pay the required amount.

Finally, the plaintiffs claim that the circuit court's order of June 21, 2002, was erroneous because the insurance policy and the Amplan notice were ambiguous as they related to the payment of premiums. More specifically, the plaintiffs claim that the insurance policy was ambiguous because it was unclear about when the payments were due and how the premiums were to be paid. We disagree.

The plaintiffs successfully paid their premiums from January 1997 through May 1997 even though they were sent several notices informing them that their policy would be cancelled if they failed to pay before a specified date. The final notice on July 10, 1997, informed the plaintiffs that their policy would be cancelled if they failed to make the required payment before August 2, 1997. The plaintiffs failed to do so. We have reviewed the notices that were sent. The plaintiffs had no problem understanding the notices well enough to keep their policy active. The final notice was also very clear. For the plaintiffs to suggest otherwise is disingenuous.

Finally, the plaintiffs suggest that the notice of cancellation was untimely because it was sent July 2, 1997, prior to the cancellation date of August 2, 1997.

The *Hernandez v. State Farm Insurance Co.*, 170 Ill. App. 3d 1090, 524 N.E.2d 1027 (1988), decision negates this argument. The *Hernandez* court stated, "Nothing in the language of section 143.15 requires an insurer to delay the mailing of a cancellation notice until all premiums have been fully earned or that an insurer provide free coverage from the date of mailing the notice to the effective date of the cancellation." *Hernandez*, 170 Ill. App. 3d at 1094, 524 N.E.2d at 1030. Hence, this argument is also without merit.

In light of the foregoing considerations, we affirm the circuit court's determination that there was no genuine issue of material fact and that the defendant was entitled to a judgment as a matter of law.

Affirmed.

GOLDENHERSH and KUEHN, JJ., concur.