# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Auto-Owners Insurance Co. v. Yocum*, 2013 IL App (2d) 111267

---

| | |
|---|---|
| Appellate Court Caption | AUTO-OWNERS INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. MERLE YOCUM, MERLE YOCUM TRUCKING, GARY E. DOWDING, HARMON GRAIN, LLC, and MICHIGAN MILLERS MUTUAL INSURANCE COMPANY, Defendants and Counterplaintiffs-Appellees and Cross-Appellants.–AUTO-OWNERS INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellant, v. MERLE YOCUM, MERLE YOCUM TRUCKING, GARY E. DOWDING, HARMON GRAIN, LLC, and MICHIGAN MILLERS MUTUAL INSURANCE COMPANY, Defendants and Counterplaintiffs-Appellees. |
| District & No. | Second District<br>Docket Nos. 2-11-1267, 2-12-0092 cons. |
| Filed | March 29, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action by defendant's insurer seeking a declaratory judgment that the insurer had no duty to defend or indemnify an underlying lawsuit arising from a fatal collision involving one of defendant's vehicles, summary judgment was properly entered for defendant and against the insurer, notwithstanding the insurer's contention that the policy was cancelled just before the accident, since the record showed that although the insurer did cancel the policy due to defendant's failure to pay the premium, at that time, defendant's account contained an excess premium arising from defendant's cancellation of coverage for two vehicles not involved in the claim, and under the circumstances, the insurer should have applied those funds to the payment of the premium and the policy should not have been cancelled. |
| Decision Under Review | Appeal from the Circuit Court of Ogle County, No. 09-MR-2; the Hon. Robert T. Hanson, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Robert Marc Chemers, Richard M. Waris, Donald P. Eckler, David N. Larson, and Scott L. Howie, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellant. |
| | Edward M. Kay, Amy R. Paulus, Kathleen A. Johnson, and Donald R. Sampen, all of Clausen Miller P.C., of Chicago, for appellees. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices McLaren and Zenoff concurred in the judgment and opinion. |

## OPINION

¶ 1        Defendants Merle Yocum and Merle Yocum Trucking (collectively Yocum) had an automobile insurance policy with the plaintiff, Auto-Owners Insurance Company. On September 22, 2005, defendant Gary Dowding, while driving a truck owned by Yocum and hauling a trailer owned by defendant Harmon Grain, LLC (Harmon), was in an automobile accident with a car driven by Joseph Kerwin III. Kerwin died. Kerwin's representative filed a wrongful death suit against Yocum, Dowding, and Harmon. Yocum, Dowding, and Harmon tendered their defense to Auto-Owners. Defendant Michigan Millers Mutual Insurance Company (Millers) insured Harmon and asserted a claim against Auto-Owners for equitable contribution. Auto-Owners filed a declaratory judgment action seeking a declaration that it had no duty to defend or indemnify in the underlying suit because Yocum's policy had been effectively cancelled prior to the date of the accident. Both parties filed cross-motions for summary judgment. On November 17, 2011, following a hearing, the trial court denied Auto-Owners' motion and granted summary judgment in favor of the defendants. The trial court also denied the defendants' claim for sanctions under section 155 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/155 (West 2008)). Auto-Owners appeals, and the defendants cross-appeal, from the trial court's order. We affirm.

¶ 2                                          I. BACKGROUND

¶ 3        Yocum purchased an automobile insurance policy from Auto-Owners, effective from June 23, 2004, through June 23, 2005. Two vehicles were covered under the policy. When the policy was issued, Yocum was required to pay approximately two months' premium up front. Thereafter, Yocum was required to make additional premium payments on a monthly basis. At the end of 2004, Yocum had failed to make a timely monthly premium payment on

two occasions. Both times, Auto-Owners sent a notice of cancellation, requiring payment by a certain date and warning that the policy would be cancelled if payment was not received. Both times, Yocum made the required payment before the cancellation date.

¶ 4　　On April 14, 2005, Auto-Owners issued an endorsement effective March 22, 2005, adding a third vehicle to the policy. This increased the policy premium. On May 16, 2005, the policy was renewed for the period of June 23, 2005 through June 23, 2006. When Yocum did not make the premium payment due May 3, 2005, Auto-Owners sent a notice of cancellation on June 3, 2005, requesting $876.72, which was $342.22 for the remaining premium on the 2004-05 policy, plus late fees ($20), plus two months' premium for the 2005-06 policy ($257.25 per month for a total of $514.50). Yocum paid the requested amount on June 23, 2005, and ultimately received a reinstatement notice informing him to disregard the prior cancellation notice.

¶ 5　　On June 29, 2005, two of the vehicles on Yocum's policy were damaged in a traffic accident, and they were no longer being used. As a result, Yocum requested that those two vehicles be removed from the policy. Ultimately, Auto-Owners issued an endorsement on August 30, 2005, effective as of June 30, 2005, reflecting the reduced number of vehicles on the policy and the reduced policy premium. The original monthly premium was $257.25, and the reduced monthly premium was $104. The auto policy provided that "[p]remium adjustments will be made at the time of such changes or when we [Auto-Owners] become aware of the changes, if later." There is no documentary evidence of Yocum's request to remove the two vehicles, other than the endorsement.

¶ 6　　Yocum failed to make the monthly premium payment in July 2005 and Auto-Owners mailed him a notice of cancellation dated August 3, 2005. The notice required Yocum to pay $539.50 (two premium payments of $257.25 plus additional fees of $25) by August 25, 2005, and stated that the policy would be cancelled on that date if payment were not received. The notice also stated that "if you wish, you may pay any amount greater than the Minimum Due up to your Account Balance." Yocum did not make any payments or request any extensions to do so. On August 31, 2005, Auto-Owners sent Yocum a notice of cancellation, stating that the policy was cancelled effective August 25, 2005. On September 7, 2005, Auto-Owners issued a check to Yocum in the amount of $238.66, a refund for unearned premium. The check was sent to Yocum's insurance agent, who received it on September 12, 2005.

¶ 7　　On September 22, 2005, Dowding, an employee of Yocum, was in an automobile accident while driving a truck that was owned by Yocum and had been covered by the 2005-06 Auto-Owners policy at issue. The accident resulted in Kerwin's death. At the time of the accident, Dowding was pulling a trailer, owned by Harmon and insured by Millers. Yocum and Dowding were additional insureds under the Millers policy, but on an excess basis. On February 28, 2007, Kerwin's representative filed a wrongful death suit against Yocum, Dowding, and Harmon. Yocum, Dowding, and Harmon tendered their defense to Auto-Owners. Additionally, Millers asserted a claim against Auto-Owners for equitable contribution. Auto-Owners denied coverage to the defendants on the ground that the policy had been cancelled. Millers defended the underlying case and eventually settled the suit in July 2009 for $2 million.

¶ 8        In an affidavit, Yocum attested as follows. He never received a cancellation notice from Auto-Owners dated August 3 or August 31, 2005. The first time he knew that his policy was cancelled was after the September 22, 2005, accident. Since he had paid the $876.72 on June 23, 2005, he believed that his insurance was in effect at the time of the accident. On June 29, 2005, he was involved in a collision and two of his vehicles were badly damaged. As a result of the accident, he called his insurance agent to request that the two vehicles be dropped from his policy because they were no longer being used. He understood that this lowered his total annual premium from $3,300 to $1,248. He believed that the amount paid in June 2005 was sufficient to provide coverage, because he had dropped the two vehicles from the policy. He did not receive a premium refund check until after the September 2005 accident. He informed his insurance agent of the accident, but Auto-Owners denied any coverage. Yocum therefore requested that Millers handle his defense.

¶ 9        On July 10, 2007, Auto-Owners filed a declaratory judgment action in Cook County. On November 20, 2008, the defendants' motion to transfer venue was granted. Auto-Owners refiled its complaint in Ogle County. On April 24, 2009, Auto-Owners filed an amended complaint. In its amended complaint, Auto-Owners noted that Yocum, Dowding, and Harmon had been named in a wrongful death suit filed by Kerwin's representative and had tendered their defense to Auto-Owners. Auto-Owners further noted that Millers had asserted a claim against Auto-Owners for equitable contribution based on its alleged coverage of mutual insureds involved in the Kerwin suit. Additionally, Harmon and Millers had filed a small claims suit against Yocum and Auto-Owners to recover for damage to the load of beans in the Harmon trailer at the time of the accident. The defendants had each sought coverage from Auto-Owners for defense and indemnification in these suits. Auto-Owners denied coverage to each on the basis that prior to the September 22, 2005, accident the policy had been cancelled for nonpayment of premium, effective August 25, 2005. Auto-Owners sought a declaration that the policy was properly cancelled and that it owed no duty to defend or indemnify in the underlying suits.

¶ 10        On May 6, 2009, the defendants filed an answer, which included multiple affirmative defenses. The affirmative defenses were based on arguments that there had been no nonpayment of premium because there was a credit on Yocum's account, which should have been used to satisfy the premium payment due. On January 13, 2010, the defendants filed a four-count counterclaim against Auto-Owners, alleging claims based on breach of contract, waiver and estoppel, and equitable contribution. Additionally, the defendants alleged a claim for sanctions, under section 155 of the Insurance Code (215 ILCS 5/155 (West 2008)), for bad faith and vexatious and unreasonable delay. The defendants argued that there was no reasonable basis for Auto-Owners to refuse to defend and provide indemnity coverage in the Kerwin suit.

¶ 11        On June 16, 2010, Auto-Owners filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2008)). Auto-Owners argued that its cancellation notice clearly informed Yocum that $539.50 was due by August 25, 2005. It also stated that the "excess premium (if any) above the earned premium [would] be refunded." The cancellation notice was mailed to Yocum when the payment was not received. Auto-Owners argued that it was entitled to cancel the policy and

properly did so. Auto-Owners acknowledged the defendants' argument that no premium was due because the policy change in June, removing two vehicles, resulted in a reduced premium. Auto-Owners argued that there was no evidence that it knew of the requested change in June. Auto-Owners also argued that Yocum should have contacted it had he believed that there was an issue with the requested amount. Auto-Owners further argued that the only logical inference was that it did not know of the requested policy change until it was implemented on August 30, 2005, after the policy was cancelled. It then credited Yocum the premium retroactive to June 30, 2005.

¶ 12     On December 1, 2010, the defendants filed a cross-motion for summary judgment. The defendants argued that Auto-Owners was aware, at the time the policy was cancelled, that there was a credit on Yocum's account due to the fact that Yocum had removed two vehicles from his policy at the end of June. The defendants argued that, based on the prior course of dealing, Yocum reasonably believed that the credit would be applied to satisfy his July premium payment.

¶ 13     The defendants further argued that, because there was no nonpayment of premium, there was no basis to cancel Yocum's policy and, by doing so, Auto-Owners breached its duty of good faith and fair dealing. The defendants also argued that Auto-Owners waived its right to claim that there was no coverage, because Yocum had requested the change to his policy in June 2005 and no refund was issued prior to the accident. Accordingly, the defendants contended that it was reasonable for Yocum to believe that there was a credit on his account and that he still had coverage. Finally, the defendants argued that Auto-Owners' failure to provide a defense to the Kerwin suit was vexatious and unreasonable. The defendants argued that, once Yocum requested coverage, Auto-Owners should have realized its failure to apply the premium credit to Yocum's policy and provided the coverage for which Yocum had paid.

¶ 14     On July 12, 2011, a hearing was held on the parties' motions for summary judgment. The parties' arguments were consistent with their written motions. At the close of the hearing, the trial court took the matter under advisement. On November 17, 2011, the trial court issued a written order. The trial court denied Auto-Owners' motion for summary judgment and granted the defendants' cross-motion for summary judgment. The trial court noted that the policy stated that "[p]remium adjustments will be made at the time of such changes or when we become aware of the changes, if later." The trial court also noted that the changes to Yocum's auto policy, although not completed until August 30, 2005, were made effective June 30, 2005, and that "[t]here was no explanation for the delay in processing the change request." The trial court found that, if the adjustment to the policy had been made promptly, Auto-Owners would have realized that there was a premium credit on Yocum's account at the time the July 23, 2005, premium was due. Relying on *Leach v. Federal Life Insurance Co.*, 296 Ill. App. 88 (1938), the trial court found that Auto-Owners was obligated to apply the premium credit on Yocum's account to the premium amount due and that, therefore, the defendants were entitled to judgment as a matter of law. Finally, the trial court found that the defendants were not entitled to section 155 sanctions, because Auto-Owners had not acted in bad faith and there was a *bona fide* dispute as to whether the policy was properly cancelled. Thereafter, Auto-Owners filed a notice of appeal docketed in this court as case number 2-11-1267.

¶ 15    On December 9, 2011, the defendants filed a motion, pursuant to section 2-1203(a) of the Code (735 ILCS 5/2-1203(a) (West 2008)), to modify the judgment to include an award of damages. On December 14, 2011, the trial court granted the motion and entered judgment in favor of the defendants in the amount of $926,979.97, plus a *per diem* interest of $113.29 through the judgment date. Thereafter, the defendants filed a notice of cross-appeal, and Auto-Owners filed a second notice of appeal, which was docketed in this court as case number 2-12-0092. On February 17, 2012, this court granted Auto-Owners' motion to consolidate these cases on appeal.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, Auto-Owners argues that the trial court erred in denying its motion for summary judgment and in granting summary judgment in favor of the defendants. Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008). By filing cross-motions for summary judgment, parties agree that only a question of law is involved and invite the court to decide the issues based on the record. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 25. We review *de novo* a trial court's decision on a motion for summary judgment. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 18    Auto-Owners argues that it is entitled to summary judgment because it followed the proper procedures, under both the policy and the Insurance Code, for cancelling the policy for nonpayment of the premium. Auto-Owners further argues that it had no obligation to use the premium refund due to Yocum to satisfy his July premium payment. In arguing the latter, Auto-Owners relies on *Hernandez v. State Farm Insurance Co.*, 170 Ill. App. 3d 1090 (1988).

¶ 19    In *Hernandez*, the plaintiff (insured) had obtained from the defendant (insurer) two insurance polices providing uninsured motorist coverage. *Id.* at 1092. At the commencement of the policy, the insured paid premiums for the first month of coverage and for an additional month (the reserve). *Id.* He paid additional premiums once a month. *Id.* The insured missed a monthly premium payment due March 3. *Id.* The insurer sent a notice stating that premiums for two months were due April 3. *Id.* The insured paid one month's worth of premium on March 25. *Id.* The insurer then sent a notice stating that an additional monthly premium was due April 15. *Id.* at 1093. The insured never made this payment. *Id.* On April 21, the insurer sent a notice stating that, due to nonpayment of the premium, the policy would be cancelled as of May 4. *Id.* On May 15, the insured gave his insurance agent a check in the amount of two monthly premiums. The insurer returned the check uncashed, stating that the policy had been canceled as of May 4. *Id.* The insured subsequently filed a declaratory judgment action, arguing that the policy was in effect on May 12, when his son was injured in a collision with an uninsured motorist. *Id.* at 1091. The trial court granted summary judgment in favor of the insured. *Id.* at 1092. The insurer appealed. *Id.*

¶ 20    On appeal, the reviewing court reversed and granted summary judgment in favor of the

insurer. The reviewing court held:

> "We conclude that the existence of the reserve did not negate the obligation of [the insured] to pay the April premium. Although the April coverage was ultimately paid for by application of the reserve, [the insured] did not pay the premium prior to the cancellation date. Thus, the 10-day notices of cancellation were properly sent for nonpayment of the April premium. The reserve ensured coverage only to May 3, 1980. Consequently, the May 15, 1980, payment of two premiums was made 11 days after the policies had been cancelled and was, therefore, untimely." *Id.* at 1094-95.

Auto-Owners argues that this determination supports the proposition that it was not obligated to apply Yocum's premium refund to the premium amount due.

¶ 21    Auto-Owners' reliance on *Hernandez* is misplaced. The holding in *Hernandez* stands for the proposition that it is proper for an insurer to send a cancellation notice before a reserve is fully used. In other words, the insurer in *Hernandez* did not have to wait until the reserve was used up, then send a 10-day notice of cancellation, and essentially provide free insurance for those 10 days. The holding in *Hernandez* in no way supports the proposition that the reserve need not be applied to the premium due. In fact, the opposite occurred in *Hernandez*. The reserve ensured coverage until May 3, and that was the date when the insurer cancelled the coverage for nonpayment of the premium.

¶ 22    In determining whether Auto-Owners had an obligation to apply the premium refund owed to Yocum to his July premium, we find persuasive *Leach*, 296 Ill. App. 88, the case on which the trial court relied. In *Leach*, an insured filed a complaint in equity to require his insurer to maintain a disability insurance policy previously issued to the insured. *Id.* at 89. The insurer had claimed that the policy lapsed due to nonpayment of a premium that was due April 30, 1936. *Id.* The insured argued that, at the time the payment was due, a disability benefits claim was pending and those benefits should have been applied to pay the April premium. *Id.* Following a hearing, the trial court ruled in favor of the insured. *Id.* The insurer appealed. The reviewing court affirmed the trial court's determination. *Id.* at 95.

¶ 23    The insurance policy at issue in *Leach* provided benefits for accidental loss of life, limb, or sight, and loss of time through sickness or accident. *Id.* at 90. The policy was issued to the insured on April 30, 1930. *Id.* An annual premium of $110.50 was due April 30 of each year. *Id.* The policy provided a 31-day grace period for payment in the case of default. *Id.* Under the terms of the policy, the insured was to receive $150 per month for loss of time, which was to be paid after the insured gave notice of loss to the insurer, furnished affirmative proof of loss, and permitted examination of the insured by the insurer's physician. *Id.* The policy further provided that any disability payments would be " 'paid at the expiration of each thirty days during the continuance of the period' " for which the insurer was liable. *Id.*

¶ 24    In *Leach*, the insured was hospitalized on December 18, 1935. *Id.* at 91. On January 25, 1936, the insured provided to the insurer preliminary proof of loss, which included certificates from his physician and his employer as to his illness. *Id.* at 92. On March 2, 1936, the insured provided proof of termination of his disability, advising that the disability ended as of February 12, 1936. *Id.* At no time after he filed his claim was the insured ever advised that his proof of loss was insufficient. *Id.* at 93. The insurer's physician examined the insured

on March 10, 1936, and in early April the insurer received permission from the insured to inspect other medical records. *Id.* On June 4, 1936, the insurer approved the insured's claim and issued a check to him for $310. *Id.* This was four days after the grace period ended for payment of the April 30 premium. *Id.*

¶ 25    In affirming the trial court, the reviewing court noted as follows:

" '[I]f money is absolutely due by [an insurer] to [an insured] policyholder when a premium falls due, the [insurer] should apply the same towards the premium and thereby, if possible, avoid forfeiture of the policy. This includes any excess of premiums paid, dividends, profits, benefit payments and the like, but the offsetting of such credits will only be required where the company actually has in its hands at the time funds which are absolutely due and payable.' " *Id.* at 94 (quoting *Long v. Monarch Accident Insurance Co. of Springfield, Massachusetts*, 30 F.2d 929, 930 (4th Cir. 1929)).

The reviewing court held that, under the policy at issue, the insurer was to pay the insured within 30 days of proof of loss, that final proof of loss was submitted on March 2, and that the insurer became liable to the insured to the extent of $310 by April 2. The reviewing court noted that there was no evidence to justify the insured's failure to make the disability payment when due. The reviewing court concluded that the "[insurer] having wrongfully withheld the disability payments was obligated to pay the [April 30] premium out of [the insured's] money in its hands." *Id.* at 95.

¶ 26    In the present case, the auto policy provided that "[p]remium adjustments will be made at the time of such changes or when we [Auto-Owners] become aware of the changes, if later." Auto-Owners sent an endorsement on August 30, 2005, making the removal of two vehicles from Yocum's policy effective as of June 30, 2005. Based on the foregoing policy language, this could be construed as an acknowledgment that it was aware of the change on June 30. In its appellant brief, Auto-Owners concedes that Yocum had requested the change to his policy on June 30. At the very latest, however, Auto-Owners was aware of the change by August 30, when it sent the endorsement letter. This was one day before it sent the cancellation notice on August 31. The removal of the two vehicles reduced the monthly premium from $257.25 to $104. Yocum had paid $514.50 toward the premium on his policy on June 23, 2005. Accordingly, the record clearly demonstrates that, at the time the July premium was due, there was excess premium on Yocum's account. Auto-Owners therefore never had any basis to cancel the policy based on nonpayment of the premium. Auto-Owners had sufficient funds in its hands at the time the July premium was due and should have applied those funds toward the payment of that premium. *Id.* at 94-95.

¶ 27    Auto-Owners argues that *Leach* is a dated decision and insufficient support for the trial court's determination. It further argues that *Leach* does not cite any of the sections of the Insurance Code that govern cancellation of a policy for nonpayment of a premium, let alone reconcile them with the requirement that excess funds in an insurer's hands must be used to pay an insured's premium. These arguments are unavailing. First, despite the fact that *Leach* is a dated decision, it is still binding authority on all circuit courts and persuasive authority in this court. *Peerless Enterprises, Inc. v. Kruse*, 317 Ill. App. 3d 133, 143 (2000). Further, although *Leach* does not cite the Insurance Code, Auto-Owners has failed to provide any

authority to support its insinuation that *Leach* is somehow at odds with that Code. Accordingly, this argument is forfeited. *Elder v. Bryant*, 324 Ill. App. 3d 526, 533 (2001) (arguments without supporting authority are forfeited).

¶ 28    On cross-appeal, the defendants argue that the trial court erred in denying their request for sanctions pursuant to section 155 of the Insurance Code (215 ILCS 5/155 (West 2008)). Section 155 provides:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $60,000[.]" *Id.*

Accordingly, section 155 allows for an award of attorney fees and costs for an insurer's "unreasonable and vexatious" refusal to comply with its policy obligations. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 523-24 (1996).

¶ 29    "An insurer will not be liable for attorney fees and costs under section 155 of the [Insurance] Code merely because it litigated and lost the issue of insurance coverage." *American States Insurance Co. v. CFM Construction Co.*, 398 Ill. App. 3d 994, 1003 (2010). "[W]here a *bona fide* dispute concerning coverage exists, costs and sanctions [under section 155] are inappropriate." *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 380 (2001). In determining whether an insurer's conduct is vexatious and unreasonable, a trial court must consider the totality of the circumstances, including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his property. *Statewide Insurance Co. v. Houston General Insurance Co.*, 397 Ill. App. 3d 410, 426 (2009). The parties agree that the trial court's denial of section 155 sanctions should be reviewed for an abuse of discretion. We therefore address the issue based on the agreed-upon standard of review. *Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 19 (2009).

¶ 30    In arguing that the trial court erred in denying their request for section 155 sanctions, the defendants rely on *Peerless*. In *Peerless*, an insured obtained automobile insurance coverage on July 2, 1993, and was involved in an accident on July 13, 1993. *Peerless*, 317 Ill. App. 3d at 136, 138. The reviewing court affirmed the trial court's finding that the insurer acted vexatiously and unreasonably when it denied insurance coverage for the insured. *Id.* at 144. In so ruling, the reviewing court noted the general policy that, when there is a dispute over potential insurance coverage, an insurer must either defend the suit under a reservation of rights or seek a declaration of no coverage. *Id.* at 145. The insurer in *Peerless* had done neither of those, but had merely refused to defend the insured. *Id.* The reviewing court also noted that there was no evidence to support the insurer's claim that the insured had cancelled the policy, effective the date of its inception on July 2, 1993. Rather, the evidence indicated

-9-

that the cancellation was to be effective on July 22, 1993, the date it was requested, which was nine days after the accident occurred. *Id.*

¶ 31     The present case is distinguishable from *Peerless*. Here, Auto-Owners did not simply refuse to provide coverage; it filed a declaratory judgment action seeking a declaration of no coverage. Additionally, unlike the insurer in *Peerless*, Auto-Owners sent a notice of cancellation and intended the cancellation to take effect prior to the accident at issue. Moreover, although a notice of cancellation was sent to Yocum on August 3, Auto-Owners was never contacted as to any errors in the premium due. The trial court found that Auto-Owners had not acted in bad faith and that there was a *bona fide* dispute as to whether the policy was properly cancelled. Based on the record before us, we cannot say that the trial court abused its discretion in making that determination.

¶ 32                               III. CONCLUSION

¶ 33     For the foregoing reasons, we affirm the judgment of the circuit court of Ogle County.

¶ 34     Affirmed.